IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CHIKE UZUEGBUNAM and JOSEPH BRADFORD, ) ) ) Plaintiffs, ) v. ) ) STANLEY C. PRECZEWSKI, et al., ) ) Defendants. ) _____ ) | Civil Action No.: 1:16-cv-04658-ELR |

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR MOOTNESS

COME NOW Defendants in the above styled civil action, by and through the undersigned counsel, the Attorney General for the State of Georgia, and respectfully submit this brief in support of their Motion to Dismiss for Mootness, showing this Court the following:

### I.   RELEVANT FACTS AND PROCEDURAL HISTORY

Plaintiffs, students at Georgia Gwinnett College ("GGC"), are challenging the constitutionality of the Freedom of Expression Policy and Disorderly Conduct Policy, claiming that the policies are unconstitutional facially and as-applied to their speech. (Doc. 13). More specifically, Plaintiffs claim that the policies violate four of their constitutional rights: (1) First Amendment right to freedom of speech; (2) First Amendment right to free exercise of religion; (3) Fourteenth Amendment right to due process; and (4) Fourteenth Amendment right to equal protection.

1

(Id.). Plaintiffs seek nominal damages for the alleged violations of their constitutional rights, as well as declaratory and injunctive relief.[1] (Doc. 13 at pp. 78-79).

On February 1, 2017, Defendants filed a Motion to Dismiss the lawsuit in its entirety. (Doc. 1). In response, Plaintiffs filed an Amended Complaint. (Doc. 13). Defendants then filed a Motion to Dismiss the Amended Complaint on March 17, 2017, which is currently pending before the Court. (Doc. 17).

However, during the pendency of the litigation, GGC revised its Freedom of Expression Policy and its Disorderly Conduct Policy, such that Plaintiffs' claims for injunctive and declaratory relief are moot. A brief summary of GGC's former policies and the revisions that have been made to those policies is as follows:

**A. GGC's Former Freedom of Expression Policy**

GGC's former Freedom of Expression Policy provided all individuals (students and non-students alike) with two Speech Zones[2] on campus. (Doc. 13, ¶ 1). The Speech Zones were available "from 11:00 a.m. to 1:00 p.m. and 5:30 p.m.

---

[1] In particular, Plaintiffs seek a preliminary and permanent injunction that prohibits Defendants from enforcing GGC's Freedom of Expression Policy and Disorderly Conduct Policy. They also seek declarations that GGC's policies, and the application of those policies to Plaintiffs' speech, violated their rights under the First and Fourteenth Amendments. (Doc. 13, pp. 78-79).

[2] The Speech Zones were located: (1) in "the concrete area/walkway between Student Housing and the Student Center," and (2) the concrete area in front of the Food Court. (Doc. 13-3 at 2).

to 7:30 p.m., Monday through Thursday, and 11:00 a.m. to 1:00 p.m. on Friday"—i.e., eighteen hours each week. (Id.). Individuals could utilize the Speech Zones at least once every thirty days. (Id.). Additionally, upon written request, the prior policy allowed individuals to engage in expressive activity in other areas and during different times. (Id.). To utilize the Speech Zones (or to engage in expressive activity outside of the zones), all individuals were required to submit a "free speech form," along with any publicity materials, to a designated Student Affairs official three business days in advance. (Doc. 13-3 at 2). The expressive activity would then be authorized if it met fifteen different criteria. (Id. at 5).

While Plaintiffs challenge multiple aspects of this former Freedom of Expression Policy, their primary concerns are that the policy allegedly: "restricts all types of student speech to two small" areas of campus; prohibits students from speaking on campus spontaneously; and requires students to obtain a permit before they may engage in any expressive activity. (Docs. 1 and 13 at ¶ 2).

### B. GGC's Revised Freedom of Expression Policy

Since the filing of Plaintiffs' Complaint and Amended Complaint, GGC has substantially revised its Freedom of Expression Policy.[3] (Affidavit of Aileen Dowell ("Dowell Aff."), attached as Exhibit 1). Under the revised policy, students such as Plaintiffs may speak anywhere on campus and at any time without having

---

[3] In doing so, Defendants in no way concede that GGC's former Freedom of Expression Policy was unconstitutional or that they violated Plaintiffs' constitutional rights in applying the former policy to their speech.

3

to first obtain a permit.  (Id. at ¶ 7 and Attach. A).  The only time students must obtain a permit is when they plan to "engage in expressive activity on campus in a group that is expected to consist of 30 or more persons."  (Id. at ¶ 8 and Attach. A).

Moreover, GGC has designated two areas on campus as "public forum areas."  (Id. at ¶ 9 and Attach. A).  GGC's revised policy makes it clear that, while students may utilize the public forum areas, they are not required to do so and can, instead, speak anywhere on campus.  (Id.).

### C. GGC's Former Disorderly Conduct Policy and Revisions Thereto

GGC's former Disorderly Conduct Policy prohibited students from engaging in disorderly conduct, and listed thirteen examples of such conduct.  (Doc. 13-9 at 26).  The first example of disorderly conduct prohibited "behavior which disturbs the peace and/or comfort of person(s)."  (Id.).  Plaintiffs claim that this particular provision of the Disorderly Conduct Policy gave Defendants authority to "prohibit students from saying anything that prompts complaints from listeners," and, hence, created an "unchecked right to restrict the content and viewpoint of what students say on campus."  (Docs. 1 and 13 at ¶ 3).

GGC has revised its Disorderly Conduct Policy to remove "behavior which disturbs the peace and/or comfort of person(s)" as an example of disorderly conduct.  (Dowell Aff., ¶ 11 and Attach. B).

4

### D. The Timing and Process Involved in Revising the Policies

GGC approved and adopted the revised policies on February 28, 2017. (Dowell Aff., ¶ 3). Indeed, both policies have been published on GGC's website and are available to the public. (Id. at ¶¶ 10, 12); see also http://www.ggc.edu/about-ggc/at-a-glance/freedom-of-expression/; http://www.ggc.edu/student-life/get-involved-on-campus/student-affairs/docs/current-student-handbook.pdf#page=23. GGC has no intention of returning to its former Speech Policy or its former Disorderly Conduct Policy. (Id. at ¶ 14).

Since the implementation of the new policies, in-house council for the Georgia Board of Regents, has provided GGC employees with four training sessions on the Freedom of Expression Policy. (Affidavit of Marc Cardinalli, attached as Exhibit 2, ¶ 5). Thus far, four training sessions have taken place. (Id. at ¶ 6). Approximately forty-nine GGC employees have attended the training sessions, including those from the following offices/departments: President, Legal Affairs, Diversity/Title IX, Provost, Student Affairs, Student Integrity, Public Safety, Security, Operations, Call Center, ResLife, and Public Relations. (Id. at ¶ 7). Additional training on the revised policies will be on-going, as needed. (Id. at ¶ 8).

## II. ARGUMENT AND CITATION TO AUTHORITIES

Defendants now move this Court to dismiss Plaintiffs' claims for injunctive and declaratory relief. As explained in more detail below, because the policies at issue have been rescinded and replaced with revised policies, Plaintiffs' claims based on the former policies are moot and must, therefore, be dismissed.

**A.     Plaintiffs' Claims for Injunctive and Declaratory Relief are Moot.**

Pursuant to Article III of the United States Constitution, "federal courts may adjudicate only actual, ongoing cases or controversies." See U.S. Const. art. III, § 2; Brooks v. Ga. State Bd. of Elections, 59 F.3d 1114, 1118 (11th Cir. 1995). An action that is moot "cannot be characterized as an active case or controversy." BankWest, Inc. v. Baker, 446 F.3d 1358, 1363 (11th Cir. 2006). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496 (1969). As the Eleventh Circuit has explained, "put another way, a case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." Florida Ass'n of Rehab. Facilities, Inc. v. Florida Dep't of Health and Rehab. Servs., 225 F.3d 1208, 1216-17 (11th Cir. 2000) (quoting Ethredge v. Hail, 996 F.2d 1173, 1175 (11th Cir. 1993)).

Thus, when events occur after the commencement of a lawsuit that deprive a federal court of its ability to give the plaintiff meaningful relief, the case is moot and must be dismissed. See, e.g., Jews for Jesus v. Hillsborough County Aviation

6

Auth., 162 F.3d 627 (11th Cir. 1998); Florida Ass'n of Rehab. Facilities, 225 F.3d at 1217 (explaining that if the court "can no longer redress the injuries claimed by the parties, the case is moot and should be dismissed").  Dismissal of a moot case is required because "mootness is jurisdictional."  See Florida Ass'n of Rehab. Facilities, 225 F.3d at 1227 n.14 (citing North Carolina v. Rice, 404 U.S. 244, 246 (1971) ("The question of mootness is . . . one which a federal court must resolve before it assumes jurisdiction")).  It is therefore incumbent upon federal courts to consider issues of mootness *sua sponte*.  Brooks, 59 F.3d at 1118 (11th Cir. 1995).

In the case at bar, GGC's change of policy has given Plaintiffs the relief they seek—i.e., the ability to distribute religious literature and exclaim their religious beliefs anywhere on campus and at any time, without having to obtain a permit.[4]  Consequently, there is no meaningful injunctive or declaratory relief left for this Court to give.  The only remaining issue is whether GGC's former policies *were* actually constitutional, which, at this stage, would be purely academic in nature.[5]  See Princeton Univ. v. Schmid, 455 U.S. 100, 102 (1982) ("We do not sit to decide hypothetical issues or to give advisory opinions about issues as to which there are not adverse parties before us").

---

[4] Defendants do not admit that their prior policy was constitutionally infirm.

[5] Moreover, any declaratory relief regarding the former policies would violate the Ex Parte Young doctrine, which prohibits retrospective relief.  Summit Med. Assocs. v. Pryor, 180 F.3d 1326, 1337 (11th Cir. 1999); see also Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 105-06 (1983).

Although the Supreme Court has noted that, in general, the "voluntary cessation of allegedly illegal conduct does not moot a case," United States v. Concentrated Phosphate Export Ass'n, 393 U.S. 199, 203 (1968), "there is an important exception to this important exception, when there is no reasonable expectation that the voluntarily ceased activity will, in fact, actually recur." United States v. W.T. Grant Co., 345 U.S. 629, 633 (1953). Significantly, where, as here, the defendant is not a private citizen but a government actor, there is a rebuttable presumption that the objectionable behavior will not recur. See Coral Springs St. Sys., Inc. v. City of Sunrise, 371 F.3d 1320, 1328-29 (11th Cir. 2004) ("Governmental entities and officials have been given considerably more leeway than private parties in the presumption that they are unlikely to resume illegal activities"); Troiano v. Supervisor of Elections, 382 F.3d 1276 (11th Cir. 2004) (explaining that courts are "more likely to trust public defendants to honor a professed commitment to changed ways").

Hence, the Supreme Court has held almost uniformly that "voluntary cessation [by a government defendant] moots the [plaintiff's] claim." Beta Upsilon Chi Upsilon Chapter v. Machen, 586 F.3d 908, 917 (11th Cir. 2009) (citations omitted) (collecting cases). Likewise, this Circuit has routinely found that a challenge to government policy that has been unambiguously terminated is moot unless there is some reasonable basis to believe that the policy will be reinstated when the suit ends. See, e.g., Troiano, 382 F.3d at 1285; Jacksonville

Prop. Rights Ass'n v. City of Jacksonville, 635 F.3d 1266 (11th Cir. 2011); Christian Coalition of Alabama v. Cole, 355 F.3d 1288 (11th Cir. 2004); Jews for Jesus v. Hillsborough County Aviation Auth., 162 F.3d 627 (11th Cir. 1998).

A presumption therefore exists in this case that Defendants' alleged violations of Plaintiffs' constitutional rights will not recur.  Moreover, this presumption is reasonable, as GGC has unambiguously revised its Speech Policy and Disorderly Conduct Policy to address Plaintiffs' concerns.  The revisions to the policies are currently in effect and are publicly available on GGC's website. (Dowell Aff., ¶¶ 4, 10, 12).  Finally, GGC has no intention of returning to its former Speech Policy or Disorderly Conduct Policy.  (Id. at ¶ 14); see Nat'l Adver. Co. v. City of Miami, 402 F.3d 1329, 1334 (11th Cir. 2005) (explaining that "the [defendant's] purpose in amending the statute is not the central focus of [the Court's] inquiry nor is it dispositive of [the Court's] decision.  Rather, the most important inquiry is whether we believe the City would re-enact the prior ordinance").  As a result, Plaintiffs' requests for injunctive and declaratory relief based on GGC's former policies are moot and must be dismissed.

### III.  CONCLUSION

For the reasons set forth above, Defendants pray that Plaintiffs' requests for injunctive and declaratory relief be dismissed as moot.

[SIGNATURES ON THE FOLLOWING PAGE]

9

Respectfully submitted,

CHRISTOPHER M. CARR    112505
Attorney General

KATHLEEN M. PACIOUS    558555
Deputy Attorney General

*/s/ Devon Orland*
DEVON ORLAND    554301
Senior Asst. Attorney General

*/s/ Ellen Cusimano*
ELLEN CUSIMANO    844964
Assistant Attorney General

Please address all communications to:

Devon Orland
Senior Assistant Attorney General
Department of Law, State of Georgia
40 Capitol Square, S.W.
Atlanta, Georgia  30334-1300
Telephone: (404) 463-8850
Facsimile:  (404) 651-5304
E-mail: dorland@law.ga.gov

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing document has been prepared in Times New Roman (14 point) and fully complies with the font and point selection requirements of LR 5.1(B), N.D. Ga.

*/s/ Ellen Cusimano*
ELLEN CUSIMANO

## CERTIFICATE OF SERVICE

I hereby certify that on this date I have electronically filed the foregoing **BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR MOOTNESS** using the CM/ECF system which will automatically send electronic mail notification of such filing to counsel of record as follows:

**David A. Cortman**
**Travis C. Barham**
**Alliance Defending Freedom**
**1000 Hurricane Shoals Rd. NE, Suite D-1100**
**Lawrenceville, GA  30043**

**Casey Mattox**
**Alliance Defending Freedom**
**440 1st Street, NW, Ste. 600**
**Washington, D.C. 20001**

I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:  **NONE**

This 31st day of March, 2017.

>                  */s/ Ellen Cusimano*
>                  ELLEN CUSIMANO