IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CHIKE UZUEGBUNAM, *et al.*,

Plaintiffs,

v.

STANLEY C. PRECZEWSKI, *et al.*,

Defendants.

Case No. 1:16-cv-04658-ELR

THE HONORABLE ELEANOR L. ROSS

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS FOR MOOTNESS

<u>**TABLE OF CONTENTS**</u>

TABLE OF AUTHORITIES ......................................................................... iv

INTRODUCTION ..................................................................................... 1

ARGUMENT ........................................................................................... 2

   I.   Defendants' policy changes do not moot Plaintiffs' damages claims...... 2

   II.   Defendants' policy changes do not moot Plaintiffs' declaratory or injunctive relief claims. .......................................................................... 3

      A. Defendants have not made it absolutely clear that they will not return to their unconstitutional policies and conduct...................... 4

         1.   Defendants have not unambiguously terminated their unconstitutional policies, and thus, they cannot benefit from any presumption in their favor.................................................... 5

         2.   Defendants have not shown that their amended policies are the result of substantial deliberation........................................... 9

         3.   Defendants have not shown any consistency regarding their amended policies. ...................................................................... 11

         4.   Defendants instead provide ample reason to believe they would return to their original unconstitutional policies........... 12

      B. Defendants' amended Speech Zone Policy merely repeats many of the constitutional flaws that led to this lawsuit......................... 16

         1.   Defendants' amended Speech Zone Policy still limits student speech to two areas of campus for a fraction of the week. ........ 17

         2.   Defendants' amended Speech Zone Policy still grants unbridled discretion, making it unconstitutional in any forum. .................. 20

         3.   Defendants' amended Speech Zone Policy still lacks protections to prevent viewpoint and content discrimination....................... 22

         4.   Defendants' amended Speech Zone Policy still imposes illegal prior restraints on student speech. ........................................... 23

         5.   Defendants' amended Speech Zone Policy is still vague........... 24

   CONCLUSION ..................................................................................... 25

CERTIFICATE OF FORMATTING ............................................................ 27

CERTIFICATE OF SERVICE ................................................................. 28

## TABLE OF AUTHORITIES

**CASES**

*ACLU v. Fla. Bar,*
999 F.2d 1486 (11th Cir. 1993)............................................... 14, 19

*Adarand Constructors, Inc. v. Slater,*
528 U.S. 216 (2000) ............................................................ 4

*Alabama v. U.S. Army Corps of Eng'rs,*
424 F.3d 1117 (11th Cir. 2005)........................................... 5

*Already, LLC v. Nike, Inc.,*
133 S. Ct. 721 (2013) ......................................................... 3

*Atheists of Fla., Inc. v. City of Lakeland,*
713 F.3d 577 (11th Cir. 2013).......................................... 2, 3, 8, 12

*Christian Coal. of Ala. v. Cole,*
355 F.3d 1288 (11th Cir. 2004).......................................... 7, 11

*City of Lakewood v. Plain Dealer Publ'g Co.,*
486 U.S. 750 (1988) ......................................................... 18

*City of Mesquite v. Aladdin's Castle, Inc.,*
455 U.S. 283 (1982) ................................... 4, 5, 9, 11, 12, 15, 25

*Cnty. of L.A. v. Davis,*
440 U.S. 625 (1979) ......................................................... 4

*Coal. for Abolition of Marijuana Prohibition ("CAMP") v. City of Atl.,*
219 F.3d 1301 (11th Cir. 2000) ............................... 15, 16, 17, 25

*Coll. Republicans at S.F. State Univ. v. Reed,*

    523 F. Supp. 2d 1005 (N.D. Cal. 2007) ...................................................... 19

*Coral Springs St. Sys., Inc. v. City of Sunrise,*

    371 F.3d 1320 (11th Cir. 2004) ...................................................... 5, 8, 15, 16

*Covenant Christian Ministries, Inc. v. City of Marietta,*

    654 F.3d 1231 (11th Cir. 2011).................................................................. 6, 16

*DeJohn v. Temple Univ.,*

    537 F.3d 301 (3d Cir. 2008) .......................................................................... 7, 14

*Doe v. Wooten,*

    747 F.3d 1317 (11th Cir. 2014)............................................... 4, 5, 6, 7, 9, 12

*Forsyth Cnty. v. Nationalist Movement,*

    505 U.S. 123 (1992) ......................................................................................... 22

*Friends of the Earth, Inc. v. Laidlaw Envt'l Servs., Inc.,*

    528 U.S. 167 (2000) ..................................................................... 2, 3, 4, 9, 12

*Frisby v. Schultz,*

    487 U.S. 474 (1988) ......................................................................................... 24

*Granite State Outdoor Advert., Inc. v. City of Clearwater,*

    351 F.3d 1112 (11th Cir. 2003) ...................................................................... 3

*Hall v. Bd. of Sch. Comm'rs of Conecuh Cnty.,*

    656 F.2d 999 (5th Cir. 1981)............................................................... 2, 8, 13

*Harrell v. Fla. Bar,*

    608 F.3d 1241 (11th Cir. 2010)................................ 3, 4, 5, 6, 7, 9, 10, 11, 15

*Henderson v. Thomas*,

    913 F. Supp. 2d 1267 (M.D. Ala. 2012) ...................................................... 10

*Horton v. City of St. Augustine*,

    272 F.3d 1318 (11th Cir. 2001) ........................................................ 7, 16, 25

*Jager v. Douglas Cnty. Sch. Dist.*,

    862 F.2d 824 (11th Cir. 1989) ................................................................ 8, 14

*Jews for Jesus, Inc. v. Hillsborough Cnty. Aviation Auth.*,

    162 F.3d 627 (11th Cir. 1998) ............................................................. 10, 11

*KH Outdoor, LLC v. Clay Cnty.*,

    482 F.3d 1299 (11th Cir. 2007) ................................................................... 3

*Knox v. Serv. Emp. Int'l Union, Local 100*,

    132 S. Ct. 2277 (2012) ........................................................................... 2, 14

*Lady J. Lingerie v. City of Jacksonville*,

    176 F.3d 1358 (11th Cir. 1999) ................................................................. 23

*Martin v. Houston*,

    __ F. Supp. 3d __, 2016 WL 7426563 (M.D. Ala. Dec. 23, 2016) ...... 9, 11, 15

*McKinnis v. Mosely*,

    693 F.2d 1054 (11th Cir. 1982) ................................................................... 3

*Nat'l Advert. Co. v. City of Ft. Lauderdale*,

    934 F.2d 283 (11th Cir. 1991) ..................................................................... 7

*Nat'l Advert. Co. v. City of Miami*,

    402 F.3d 1329 (11th Cir. 2005) ................................................................... 7

*Nat'l Ass'n of Bds. of Pharm. ("NABP") v. Bd. of Regents of Univ. Sys. of Ga.*,

    633 F.3d 1297 (11th Cir. 2011)................................................. 5, 7, 9, 10, 11

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*

    *("Ne. Fla."),*

    508 U.S. 656 (1993) ....................................... 15, 16, 17, 20, 22, 24

*Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1,*

    551 U.S. 701 (2007) ................................................................. 4, 14

*Powell v. McCormack,*

    395 U.S. 486 (1969) ....................................................................... 3

*Pro-Life Cougars v. Univ. of Hous.,*

    259 F. Supp. 2d 575 (S.D. Tex. 2003)........................................ 14

*Rich v. Sec'y, Fla. Dep't of Corr.,*

    716 F.3d 525 (11th Cir. 2013) ........................................ 5, 6, 7, 14

*Seay Outdoor Advert., Inc. v. City of Mary Esther,*

    397 F.3d 943 (11th Cir. 2005)........................................... 4, 8, 25

*Sec'y of Labor v. Burger King Corp.,*

    955 F.2d 681 (11th Cir. 1992).................................................. 7, 13

*Sheely v. MRI Radiology Network, P.A.,*

    505 F.3d 1173 (11th Cir. 2007)................................... 2, 7, 9, 12, 13

*Troiano v. Supervisor of Elections,*

    382 F.3d 1276 (11th Cir. 2004) ......................................... 5, 8, 11

*United States v. Or. State Med. Soc'y,*

    343 U.S. 326 (1952)...................................................................... 1

*United States v. W.T. Grant Co.*,

    345 U.S. 629 (1953) ............................................................. 1, 2, 3, 4, 13, 14

*Univ. of Cincinnati Chapter of Young Ams. for Liberty v. Williams*,

    2012 WL 2160969 (S.D. Ohio, Jun. 12, 2012) ............................... 2, 7, 14, 15

*Walling v. Helmerich & Payne, Inc.*,

    323 U.S. 37 (1944) ....................................................................................... 14

*Wolff v. McDonnell*,

    418 U.S. 539 (1974) ....................................................................................... 3

*Wollschlaeger v. Gov. of Fla.*,

    848 F.3d 1293 (11th Cir. 2017) (en banc) .................................................. 25

**OTHER AUTHORITIES**

Ga. Gwinnett Coll., *Campus Map Public Forum Areas*, *available at*

    http://www.ggc.edu/policies/docs/GGC-Campus-Map-Public-Forum-

    Areas.pdf (last visited Apr. 23, 2017) ................................................... 17, 18

GA. GWINNETT COLL., GEORGIA GWINNETT COLLEGE CATALOG 2013–2014,

    *available at* http://www.ggc.edu/academics/docs/2013-2014-catalog/ 2013-

    2014-catalog.pdf (last visited Apr. 23, 2017) ............................................. 13

Ga. Gwinnett Coll., *GGC Hours*, *available at* http://www.ggc.edu/about-

    ggc/hours.html (last visited Apr. 23, 2017) ................................................ 19

## INTRODUCTION

In June 2013, Plaintiffs' counsel sent Defendants an informational letter, detailing how their Speech Zone Policy violated students' constitutional rights and offering to assist them in revising it so that "no need for litigation to protect student expression will arise." 1st Am. V. Compl. ("Am. Compl.") ¶¶ 197–200, Feb. 15, 2017, ECF No. 13. Defendants did nothing, refusing to respond, let alone change any policies. *Id.* ¶ 201. Instead, they continued to maintain and enforce this policy, *id.* ¶¶ 202–03, as Plaintiffs well know. *Id.* ¶¶ 204–315.

In December 2016, Mr. Uzuegbunam filed suit, seeking to fix the same flaws detailed in the 2013 letter. Compl., Dec. 19, 2016, ECF No. 1. Defendants still refused to change any policies. Instead, they filed a motion to dismiss, defending in forty-two pages all aspects of their policies. Defs.' Memo. of Law in Support of Mot. to Dismiss ("Defs.' 1st MTD Br."), Feb. 1, 2017, ECF No. 11-1.

After Plaintiffs amended the complaint, Defendants filed another motion to dismiss, again defending all aspects of their policies with forty-three pages of briefing. *See* Defs.' Memo. of Law in Supp. of Defs' Mot. to Dismiss ("Defs.' 2d MTD Br."), Mar. 17, 2017, ECF No. 18-1. Only then did they reveal that they had "recently revised both policies" and would file this motion. *Id.* at 1 n.1.

For over sixty years, the Supreme Court has held: "'It is the duty of the courts to beware of efforts to defeat injunctive relief by protestations of repentance and reform. . . .'" *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 n.5 (1953) (quoting *United States v. Or. State Med. Soc'y*, 343 U.S. 326, 333 (1952)). Under Eleventh Circuit law, Defendants' protestations (*i.e.*, assurances they have no intention of reinstituting the original policies) "'do[] not suffice to make

a case moot," but are instead "one of the factors to be considered in determining the appropriateness of granting an injunction.'" *Atheists of Fla., Inc. v. City of Lakeland*, 713 F.3d 577, 594 (11th Cir. 2013) (quoting *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1184 (11th Cir. 2007) (quoting *W.T. Grant Co.*, 345 U.S. at 633)); *Hall v. Bd. of Sch. Comm'rs of Conecuh Cnty.*, 656 F.2d 999, 1001 (5th Cir. 1981) ("To defeat jurisdiction . . . , defendants must offer more than their mere profession that the conduct has ceased and will not be revived."); *accord Univ. of Cincinnati Chapter of Young Ams. for Liberty v. Williams*, 2012 WL 2160969, *2 n.1 (S.D. Ohio, Jun. 12, 2012) (rejecting university president's affidavit as "insufficient to preclude jurisdiction"). This is particularly true when they still defend the original policies. By repeating the flaws of the original Speech Zone Policy, they prove that they would return to—indeed, never abandoned—their illegal conduct. So no claims are moot, including the damages claims that cannot be mooted here. This motion should be denied.

<u>**ARGUMENT**</u>

"A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Emp. Int'l Union, Local 100*, 132 S. Ct. 2277, 2287 (2012) (quotations omitted). "[A]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Id.* (quotations omitted). As "the party asserting mootness," Defendants have the "heavy burden" of proving this case is moot. *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs., Inc.*, 528 U.S. 167, 189 (2000).

**I.    Defendants' policy changes do not moot Plaintiffs' damages claims.**

Defendants wisely do not seek to dismiss Plaintiffs' damages claims. Defs.'

Br. in Supp. of Mot. to Dismiss for Mootness ("Defs.' 3d MTD Br.") at 6, ECF No. 21-1 (addressing "claims for injunctive and declaratory relief"). Indeed, it is well established that because Plaintiffs "requested damages . . . , the changes to the [policies] do not make this case moot."[1] *Granite State Outdoor Advert., Inc. v. City of Clearwater*, 351 F.3d 1112, 1119 (11th Cir. 2003); *accord KH Outdoor, LLC v. Clay Cnty.*, 482 F.3d 1299, 1303 (11th Cir. 2007) (same).

## II. Defendants' policy changes do not moot Plaintiffs' declaratory or injunctive relief claims.

"It is well-settled 'that a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued.'" *Atheists of Fla.*, 713 F.3d at 594 (quoting *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 727 (2013)). "Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Already*, 133 S. Ct. at 727.

As a finding of mootness would leave Defendants "'free to return to [their] old ways,'" *Harrell v. Fla. Bar*, 608 F.3d 1241, 1265 (11th Cir. 2010) (quoting *W.T. Grant Co.*, 345 U.S. at 632), they can carry their "heavy burden" of proving that this case is moot, *id.* (quoting *Laidlaw*, 528 U.S. at 189), only by demonstrating that (1) "'there is no reasonable expectation that the alleged

---

[1] To the extent declaratory relief is needed to award damages, those claims are not moot. "A court may grant declaratory relief even though it chooses not to issue an injunction," such as when finding the injunction moot. *Powell v. McCormack*, 395 U.S. 486, 499 (1969). When an injunction is barred but a damages claim remains pending, declaratory relief may be issued as a predicate to damages. *Wolff v. McDonnell*, 418 U.S. 539, 554–55 (1974); *McKinnis v. Mosely*, 693 F.2d 1054, 1057 (11th Cir. 1982) (noting "declaratory judgment as a predicate to a damages award would not be barred" (quoting *Wolff*, 418 U.S. at 554–55)).

violation will recur,'" and (2) "'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Seay Outdoor Advert., Inc. v. City of Mary Esther*, 397 F.3d 943, 946 (11th Cir. 2005) (quoting *Cnty. of L.A. v. Davis*, 440 U.S. 625, 631 (1979)). Failing to prove just one of these means this case is not moot. But Defendants fail to prove both.

### A. Defendants have not made it absolutely clear that they will not return to their unconstitutional policies and conduct.

Under the voluntary cessation doctrine, the "'test for mootness . . . is a stringent one,'" *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 n.10 (1982) (quoting *W.T. Grant Co.*, 345 U.S. at 632), and Defendants face a "heavy" and "formidable" burden. *Laidlaw*, 528 U.S. at 189–90. Indeed, a "case *might* be moot if subsequent events made it *absolutely* clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Aladdin's Castle*, 455 U.S. at 289 n.10 (quoting *W.T. Grant Co.*, 345 U.S. at 633) (emphasis added).

Defendants say this burden does not apply to public officials. Defs.' 3d MTD Br. at 8–9. The Eleventh Circuit begs to differ: "The Supreme Court has applied this same standard in cases involving government actors." *Doe v. Wooten*, 747 F.3d 1317, 1322 (11th Cir. 2014) (citing *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007); *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 224 (2000)). Indeed, the Court set forth this test in a case against a city. *Aladdin's Castle*, 455 U.S. at 287. "In keeping with these Supreme Court decisions, [the Eleventh Circuit] also employs this standard, even for government actors." *Wooten*, 747 F.3d at 1322; *accord Harrell*, 608 F.3d at 1268 (finding "Bar has not borne its heavy burden of showing that it is

'*absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur'" (emphasis in *Harrell*) (quoting *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1131 (11th Cir. 2005))).

Thus, Defendants must make "it *absolutely* clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Aladdin's Castle*, 455 U.S. at 289 n.10 (emphasis added). To see if they did so, this Court must consider whether (1) "the termination of the offending conduct was unambiguous;" (2) "the change in government policy or conduct appears to be the result of substantial deliberation, or is simply an attempt to manipulate jurisdiction;" and (3) Defendants have "consistently applied a new policy." *Nat'l Ass'n of Bds. of Pharm. ("NABP") v. Bd. of Regents of Univ. Sys. of Ga.*, 633 F.3d 1297, 1310 (11th Cir. 2011). As Defendants fail each factor, their motion should be denied.

### 1. Defendants have not unambiguously terminated their unconstitutional policies, and thus, they cannot benefit from any presumption in their favor.

The Eleventh Circuit "often gives government actors 'more leeway than private parties in the presumption that they are unlikely to resume illegal activities,'" *Wooten*, 747 F.3d at 1322 (quoting *Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1328–29 (11th Cir. 2004)), calling it a "rebuttable presumption," *id.* (quoting *Troiano v. Supervisor of Elections*, 382 F.3d 1276, 1283 (11th Cir. 2004)), or "lesser burden," *id.* (quoting *Rich v. Sec'y, Fla. Dep't of Corr.*, 716 F.3d 525, 531 (11th Cir. 2013)). But a "government actor is entitled to this presumption only *after* it has shown unambiguous termination of the complained activity." *Id.*; *accord Harrell*, 608 F.3d at 1267–68 ("[W]e are unable to

say that the Board, through its decision, 'unambiguously terminated' the challenged application . . . , as required to invoke the presumption we identified in *Troiano*."). Defendants merely (and erroneously) assume this presumption automatically applies; they are "required to justify the application of the presumption before benefiting from it." *Wooten*, 747 F.3d at 1323. This they fail to do.

But by making this assumption, Defs.' 3d MTD Br. at 8–9, Defendants seem to suggest that, as one district court ruled, Plaintiffs must show "a substantial likelihood" that Defendants will repeat their illegal conduct. *Wooten*, 747 F.3d at 1321. But the Eleventh Circuit reversed that court, declaring: "this is not the standard we applied in *Troiano* or in later cases involving voluntary cessation by government actors." *Id.* at 1323. In so doing, the lower court "improperly shift[ed] the burden to [the plaintiff]." *Id.*

To assess whether Defendants' "stopping of the challenged conduct is sufficiently unambiguous," this Court must consider the "timing and content of the cessation decision." *Id.* (citing *Rich*, 716 F.3d at 531–32); *accord Harrell*, 608 F.3d at 1266. The content cuts against mootness as Defendants provided no evidence of substantial deliberation, *see infra* Part II.A.2, and their amended policies maintain the flaws that led to this lawsuit, *see infra* Part II.B.

The timing also undercuts any claim that Defendants unambiguously terminated their illegal conduct. The Eleventh Circuit generally refuses to moot cases when defendants change their policies and practices after being sued.[2]

---

[2] In rare instances when the Eleventh Circuit mooted cases based on post-litigation changes, another extenuating factor has generally been present. *See, e.g.*, *Covenant Christian Ministries, Inc. v. City of Marietta*, 654 F.3d 1231, 1243–44 (11th Cir. 2011) (mooting injunctive claims due to post-litigation

*Wooten*, 747 F.3d at 1325 (finding change days before trial "suggests a change was made simply to deprive the District Court of jurisdiction"); *Rich*, 716 F.3d at 532 (finding change "not made before litigation was threatened" was "an attempt to manipulate jurisdiction"); *NABP*, 633 F.3d at 1311–12 (rejecting mootness, even applying a presumption for public officials, when the change "appears to have been made solely in response to the current litigation"); *Harrell*, 608 F.3d at 1267 (same when defendants changed "only at the urging of the Bar's counsel after this litigation had commenced"); *Sheely*, 505 F.3d at 1186 (same when change came after months of litigation); *Horton v. City of St. Augustine*, 272 F.3d 1318, 1324, 1328–29 (11th Cir. 2001) (same for change after appeal); *Sec'y of Labor v. Burger King Corp.*, 955 F.2d 681, 684 (11th Cir. 1992) (same for change on "eve of trial"); *Nat'l Advert. Co. v. City of Ft. Lauderdale*, 934 F.2d 283, 284, 286 (11th Cir. 1991) (same for change "approximately six weeks" after lawsuit).[3] Indeed, even changes on the eve of litigation may

changes because those changes "fundamentally changed" the challenged ordinance and defendants were trying to comply with a district court's interpretation of RLUIPA); *Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1329, 1334–35 (11th Cir. 2005) (finding post-litigation changes mooted case because the "unconstitutional portions of the . . . ordinance no longer exist"); *Christian Coal. of Ala. v. Cole*, 355 F.3d 1288, 1292–93 (11th Cir. 2004) (finding mootness when post-litigation changes were "a result of subsequent events out of [defendants'] control," namely complying with an intervening Supreme Court ruling). Here, Defendants are not responding to any court decisions, and their policies do not correct all of the constitutional issues in this case. *See infra* Part II.B.

[3]   Courts have similarly viewed mootness claims from colleges based on post-litigation policy changes with a jaundiced eye. *See, e.g.*, *DeJohn v. Temple Univ.*, 537 F.3d 301, 309–11 (3d Cir. 2008) (rejecting mootness in part because the post-litigation change "left [the court] with no assurance that Temple will not reimplement its [original] policy, absent an injunction, after this litigation has concluded"); *Williams*, 2012 WL 2160969, at *2 n.1 (rejecting mootness because "the [post-litigation] timing of the University's changes leaves this

not moot cases. *See, e.g.*, *Hall*, 656 F.2d at 1000 (rejecting mootness when the challenged actions "continue[d] until the filing of this lawsuit was imminent"); *Jager v. Douglas Cnty. Sch. Dist.*, 862 F.2d 824, 833 (11th Cir. 1989) (same).

While delayed, grudging changes suggest lack of real commitment to a new policy, the Eleventh Circuit is more willing to moot cases when officials make changes before litigation or soon after being alerted to the illegality. When atheists objected to invocations, the city changed its practice "a few days later" in response to a letter. *Atheists of Fla.*, 713 F.3d at 581–82. This prompt action mooted claims about the prior practice. *Id.* at 595 (finding mootness due to changes "a few days" after being requested and "months prior to the filing of this action"); *accord Seay*, 397 F.3d at 948 (same when new ordinance "was prompted by communications from Plaintiff's counsel and preceded the filing of this suit by two months"); *Troiano*, 382 F.3d at 1285 (same when official "ceased the allegedly illegal practice . . . prior to receiving notice of the litigation"); *Sunrise*, 371 F.3d at 1333 (same when city "promptly amended the Sign Code in response to a single letter from the plaintiff, and, notably, before it had ever been sued").

Here, Defendants spurned a letter from Plaintiffs' counsel that informed them of the need to change their policy and offered to help them do so. Am. Compl. ¶¶ 197–200. They did not even deign to respond. *Id.* ¶ 201. Instead, they continued to enforce it for three more years. *Id.* ¶¶ 202–03. Once litigation began, they did not unveil these amended policies until after filing two motions that defended the validity of the original policies. Even in this their third

Court with no assurance that the challenged conduct will not be re-implemented, absent an injunction at the conclusion of this litigation").

motion, they continue to defend those policies. Defs.' 3d MTD Br. at 3 n.3, 7 n.4. Thus, Defendants have not experienced "a genuine change of heart" but instead "desire to avoid liability" and to "deprive the court of jurisdiction." *Sheely*, 505 F.3d at 1186, 1188. They have made these changes "solely in response to the current litigation." *NABP*, 633 F.3d at 1312.

Between the suspect timing of their changes and the continuing constitutional violations in their policies, *see infra* Part II.B, Defendants did not prove that they unambiguously terminated their illegal conduct. *Harrell,* 608 F.3d at 1267–68. Thus, they cannot benefit from any presumption that their illegal acts will not resume when they have not even shown that they ever ended in the first place. Defendants have certainly not "made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Aladdin's Castle*, 455 U.S. at 289 n.10. Their motion should be denied.

## 2. Defendants have not shown that their amended policies are the result of substantial deliberation.

Defendants also did not carry their "heavy" and "formidable" burden, *Laidlaw*, 528 U.S. at 189–90, because they provide no evidence their changes are "the result of substantial deliberation," rather than "simply an attempt to manipulate jurisdiction." *NABP*, 633 F.3d at 1310. Here, "merely abiding by proper procedures" in adopting new policies is not enough, *Martin v. Houston*, __ F. Supp. 3d __, 2016 WL 7426563, at *6 (M.D. Ala. Dec. 23, 2016), but Defendants do not even provide evidence of this. Rather, they must explain "why [they] decided to make the [changes] now, when [they] failed to do so earlier," *Wooten*, 747 F.3d at 1325, either when Plaintiffs' counsel first contacted them

or right after the lawsuit began. Am. Compl. ¶¶ 197–203. But nowhere do they provide any such explanation or "any reasoned basis for voluntarily ceasing the [challenged] conduct" and policies. *NABP*, 633 F.3d at 1312.

Instead, Defendants just announced these amended policies—with nary a word of explanation—in a footnote to a brief that defended the original ones. Defs.' 2d MTD Br. at 1 n.1. Here, they give not even the scantest hint of what prompted these changes. They provide "no information about [their] deliberation process," not even the insufficient "vagaries about the basis for [their] decision to alter [their] policies." *Henderson v. Thomas*, 913 F. Supp. 2d 1267, 1286 (M.D. Ala. 2012). They "acted in secrecy, meeting behind closed doors and, notably, fail[ed] to disclose any basis for [their] decision." *Harrell*, 608 F.3d at 1267. So this Court has "no idea whether [their] decision was 'well-reasoned' and therefore likely to endure," *id.*, making their "policy changes . . . far from unambiguous." *Henderson*, 913 F. Supp. 2d at 1286; *accord Harrell*, 608 F.3d at 1267 (acting in a "clandestine or irregular manner" means "it can hardly be said that [defendants'] 'termination' of the behavior is unambiguous").

In stark contrast, the Eleventh Circuit mooted a challenge to an airport literature distribution policy because defendants had reviewed the new one "for nine years," *Jews for Jesus, Inc. v. Hillsborough Cnty. Aviation Auth.*, 162 F.3d 627, 628 n.2 (11th Cir. 1998), which qualified as "substantial deliberation." *Id.* at 629. At best, Defendants can hardly clear nine weeks, during which they consistently defended—and still defend—their original policies. Nor did they change their policies in response to an intervening event "out of [their] control."

*Christian Coal.*, 355 F.3d at 1292 (mooting case because defendants changed their position to comply with a new Supreme Court decision).

Defendants' "complete lack of any record of deliberation . . . weighs in favor of a finding of jurisdictional manipulation," not any true change of heart that is sure to last beyond this litigation. *Martin*, 2016 WL 7426563, at *6. Thus, their motion should be denied.

### 3. Defendants have not shown any consistency regarding their amended policies.

Defendants also cannot pass the "stringent" mootness test, *Aladdin's Castle*, 455 U.S. at 289 n.10, because they have not shown that they have "consistently applied a new policy or adhered to a new course of conduct." *NABP*, 633 F.3d at 1310. They cannot do this as their policies are only weeks old.

Here, courts look for consistent enforcement. The Eleventh Circuit mooted a voting machines challenge when the defendant "consistently followed" the new policy for two years and had "taken actions to implement it even prior to the beginning of the litigation." *Troiano*, 382 F.3d at 1285. It mooted a challenge to an airport literature distribution policy that had "been consistently applied for the past three years." *Jews for Jesus*, 162 F.3d at 629. Defendants give no evidence of similarly consistent enforcement of their newly-minted policies. At best, "the record is not clear," but this is enough to "raise a substantial possibility that '[they] . . . changed course simply to deprive the court of jurisdiction.'" *NABP,* 633 F.3d at 1312 (quoting *Harrell*, 608 F.3d at 1267).

Defendants have not only not "consistently applied" their new policies, they do not even consistently explain them—even in the pending motions. As

recently as mid-March, in another pending motion, Defendants proclaimed all portions of campus outside the speech zones were "non-public fora" that "GGC intentionally chose to close [to] expressive public discourse." Defs.' 2d MTD Br. at 13. That is, if they did not designate an area a public forum (which they did only for the speech zones), it was a non-public forum, and students could not use it without a permit. Under the new policy, only two places are "designated . . . as public forums." Dowell Aff. Attach. A § B. Yet they insist students may now "speak anywhere on campus and at any time without having to first obtain a permit." Defs.' 3d MTD Br. at 3–4. The new policy does not actually say this, *see infra* Part II.B.1, but if it were true, it would be utterly inconsistent with a non-public forum. When even their description of student free speech rights and how their amended policy impacts those rights lacks consistency, they cannot show that "it [is] absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Aladdin's Castle*, 455 U.S. at 289 n.10.

### 4. Defendants instead provide ample reason to believe they would return to their original unconstitutional policies.

Defendants also have not carried their "heavy," "formidable" burden in proving mootness, *Laidlaw*, 528 U.S. at 189–90, because at least three other factors indicate that there is reason to believe they will revert to their illegal conduct. *Wooten*, 747 F.3d at 1323 ("These factors are not exhaustive. . . .").

First, courts are "more likely to find a reasonable expectation of recurrence when the challenged behavior constituted a continuing practice or was otherwise deliberate." *Atheists of Fla.*, 713 F.3d at 594 (quoting *Sheely*, 505 F.3d at 1184–85). "When defendants are shown to have settled into a continuing

practice . . . , courts will not assume it has been abandoned without clear proof." *W.T. Grant Co.*, 345 U.S. at 632 n.5. A "five-year history of violations" prevented mootness, *Burger King*, 955 F.2d at 684, as did a "longstanding practice" abandoned on the eve of litigation, *Hall*, 656 F.2d at 1000, and a "years-long policy" that did not "involve[] only low-level . . . employees." *Sheely*, 505 F.3d at 1185.

Defendants flunk this test. Their Speech Zone Policy has been in place since at least 2013 when Plaintiffs' counsel sent the informational letter. Am. Compl. ¶¶ 197–201. For three years, they continued to enforce it, *id.* ¶¶ 202–03, and their Speech Code.[4] Both policies were created, implemented, or enforced by high-ranking GGC officials, including its president, two provosts, two deans, a director, the head of an office, and its police chief. *Id.* ¶¶ 26–89. Indeed, the *Student Code of Conduct,* which includes the Speech Code, was "reviewed and approved by the USG Office of Legal Affairs." Am. Compl. Ex. 9 at 23. When Defendants enforced the Speech Zone Policy against Mr. Uzuegbunam, two high-ranking officials—the Head of Access Services and the Director of the Office of Student Integrity—were involved. Am. Compl. ¶¶ 218–33. When they enforced the Speech Code, the police officers consulted with Defendant Dowell, *id.* ¶ 267, and acted at the direction of Defendants Dowell and Schneider. *Id.* ¶ 182. Just the fact that Defendants "called the police to enforce" the Speech Code emphasizes the intentionality of their conduct. *Sheely*, 505 F.3d at 1185.

Second, Defendants' insincere "protestations of repentance and reform,"

---

[4] *See* GA. GWINNETT COLL., GEORGIA GWINNETT COLLEGE CATALOG 2013–2014 at 59, *available at* http://www.ggc.edu/academics/docs/2013-2014-catalog/2013-2014-catalog.pdf (last visited Apr. 23, 2017) (prohibiting as "disorderly conduct" any "behavior which disturbs the peace and/or comfort of person(s)").

*W.T. Grant Co.*, 345 U.S. at 632 n.5, ring hollow as they still defend the constitutionality of their original policies. The Supreme Court consistently rejects mootness claims when defendants still defend their prior conduct. *See, e.g.*, *Walling v. Helmerich & Payne, Inc.*, 323 U.S. 37, 43 (1944) (rejecting mootness as "[r]espondent has consistently urged the validity of the split-day plan and would presumably be free to resume the use of this illegal plan were not some effective restraint made."); *Parents Involved*, 551 U.S. at 719 (same because "the district vigorously defends the constitutionality of its race-based program" that it voluntarily ceased); *Knox*, 132 S. Ct. at 2287 ("[S]ince the union continues to defend the legality of the Political Fight-Back fee, it is not clear why the union would necessarily refrain from collecting similar fees in the future.").

To the Eleventh Circuit, continuing to defend supposedly discarded policies provides reason to believe that the wrongful conduct will recur. When school officials "continue[d] to press on appeal that the voluntarily ceased conduct should be declared constitutional," it found that this "suggests [the district] may revert to the practices it engaged in prior to the development of the equal access plan."[5] *Jager*, 862 F.2d at 834; *accord Rich*, 716 F.3d at 532 (same); *ACLU v. Fla. Bar*, 999 F.2d 1486, 1494–95 (11th Cir. 1993) (rejecting mootness when defendants insisted the challenged regulation was "constitutional and

---

[5] Courts have similarly rejected mootness claims when colleges still defend their prior speech codes or speech zones. *See, e.g.*, *DeJohn*, 537 F.3d at 309, 311 (rejecting mootness due to policy changes because "Temple defended and continues to defend the constitutionality of its prior . . . policy"); *Williams*, 2012 WL 2160969, at *2 n.1 (same); *Pro-Life Cougars v. Univ. of Hous.*, 259 F. Supp. 2d 575, 581 (S.D. Tex. 2003) (same because officials "continue vigorously to defend the constitutionality of the First Policy").

enforceable"). After all, "if the enforcing authority is defending the challenged law or rule in court, an intent to enforce the rule may be inferred." *Harrell*, 608 F.3d at 1257. But when officials "expressly disavowed any intention of defending the old Sign Code," there was no intent to "reinstate it later, just as soon as the threat of a lawsuit had abated." *Sunrise*, 371 F.3d at 1333; *accord Martin*, 2016 WL 7426563, at *8.

Here, Defendants twice insist that the original policies, and the actions taken to enforce them, are fully constitutional. Defs.' 3d MTD Br. at 3 n.3, 7 n.4. Of course, they already filed two motions to dismiss—totaling almost ninety pages—defending those policies and actions in their entirety, one of which is still pending before this Court. As they consider these original policies worthy of such vigorous defense and have provided no rationale for the sudden changes, they have not done what they must to establish mootness: "ma[k]e it absolutely clear that the allegedly wrongful behavior [can]not reasonably be expected to recur." *Aladdin's Castle*, 455 U.S. at 289 n.10.

Third, Defendants' amended Speech Zone Policy repeats many of the flaws that led to this lawsuit. *See infra* Part II.B. Thus, "'there is no mere risk that [they] will repeat [their] allegedly wrongful conduct; [they] ha[ve] already done so.'" *Sunrise*, 371 F.3d at 1330 (quoting *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville ("Ne. Fla.")*, 508 U.S. 656, 662 (1993)); *accord Coal. for Abolition of Marijuana Prohibition ("CAMP") v. City of Atl.*, 219 F.3d 1301, 1315 (11th Cir. 2000); *Williams*, 2012 WL 2160969 at *2 n.1 ("[T]he Court need not speculate whether Defendants will return to the allegedly

wrongful conduct because they already have in the form of the new policies.").

Defendants have not unambiguously terminated their illegal conduct, displayed substantial deliberation in amending their policies, or shown any consistency regarding the new policies. Their history of enforcing the original policies, their continued defense of those policies, and the content of the amended ones give ample reason to believe they would revert to their prior conduct.

### B. Defendants' amended Speech Zone Policy merely repeats many of the constitutional flaws that led to this lawsuit.

Not only did Defendants fail to prove they will not revert to their illegal conduct, they never actually ended it. "[T]he Supreme Court has declined to hold moot a challenge to a repealed law . . . when it is replaced by another constitutionally suspect law." *Sunrise*, 371 F.3d at 1330. Otherwise, "defendant[s] could moot a case by repealing the challenged statute and replacing it with one that differs only in some insignificant respect." *Ne. Fla.*, 508 U.S. at 662.

"[W]here a superseding statute leaves objectionable features of the prior law substantially undisturbed, the case is not moot." *Covenant*, 654 F.3d at 1243 (quotation omitted). That is, "a superseding statute or regulation moots a case only to the extent that it removes challenged features of the prior law. To the extent that those features remain in place, and changes in the law have not so fundamentally altered the statutory framework as to render the original controversy a mere abstraction, the case is not moot." *Id.* (quotation omitted); *CAMP*, 219 F.3d at 1310 (same); *Horton*, 272 F.3d at 1326 (noting amendments "may moot a case to the extent they remove certain challenged features," but not "if they leave other challenged features substantially undisturbed").

This Court must look at the "gravamen" of the Complaint and see if the new Speech Zone Policy poses *any* of the same problems as the original one. *Ne. Fla.*, 508 U.S. at 662; *accord CAMP*, 219 F.3d at 1310 ("[W]e must stop, look, and listen to determine the impact of the changes in the law." (quotation omitted)). Here, the amended policy poses many of the same constitutional problems that the Complaint identifies and that Plaintiffs' recent brief details. Pls.' Resp. in Opp. to Defs.' Mot. to Dismiss ("MTD Resp."), ECF No. 22.[6] Even if "[t]he new [policy] may disadvantage [Plaintiffs] to a lesser degree than the old one," if "it disadvantages them in the same fundamental way," Plaintiffs' injunctive and declaratory relief claims are not moot. *Ne. Fla.*, 508 U.S. at 662.

**1. Defendants' amended Speech Zone Policy still limits student speech to two areas of campus for a fraction of the week.**

Defendants' original Speech Zone Policy limited student speech to two tiny zones that were open just 10% of the week. Am. Compl. ¶¶ 104, 114–24; *accord* Pls.' MTD Resp. at 4–6. Their amended policy imposes similar restrictions.

This new policy still limits student speech to two zones. It says it does two things: "[1] only establishes as designated public forums certain outdoor areas of GGC's campus and [2] sets forth requirements for forum reservations." Dowell Aff. Attach. A § A, ECF No. 21-2. Later it specifies that "GGC has designated ZONE A and ZONE B as public forums," *id.* § B, which *appear to* be about the same as the original speech zones.[7] Am. Compl. ¶¶ 113–24. So it outlines where

---

[6]  Citations to this brief will use the page numbers at the bottom of the page.

[7]  Defendants' amended policy does not say where Zones A and B are located. Their map does not provide clear boundaries for these areas but suggests that they may cover roughly the same areas as the Sidewalk and Patio Speech Zones. Ga. Gwinnett Coll., *Campus Map Public Forum Areas*, *available at*

the designated public fora are and when students have to reserve them. And Defendants have repeatedly insisted that any areas that they do not designate as public fora are "non-public fora" that "GGC intentionally chose to close [to] expressive public discourse." Defs.' 2d MTD Br. at 13; Defs.' 1st MTD Br. at 12.

Defendants repeatedly assert that students may now "speak anywhere on campus and at any time without having to first obtain a permit." Defs.' 3d MTD Br. at 3–4. But nowhere do they quote where the policy itself says this—because it does not. It only references student speech outside these zones when giving officials discretion (1) to move expressive activities to the zones, Dowell Aff. Attach. A § C.II, and (2) to open other areas when the zones are in use or not adequate for the event, *id.* §§ E.3, E.5. Nowhere does it say students may speak freely in the open, outdoor, generally accessible areas of campus. Indeed, Defendants cannot simultaneously insist that any areas outside the speech zones are nonpublic fora and that students may freely speak in them without a permit. One or the other cannot be true.

Defendants erroneously insist their assurances fill the gap. But the Supreme Court requires that "the limits [Defendants] claim[] are implicit in [their policy] be made explicit by textual incorporation, binding judicial or administrative construction, or well-established practice." *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 770 (1988). They cannot satisfy this standard by implicitly amending an amended policy with nontextual assertions in an affidavit. If they intend to open the campus to student speech, then they must

http://www.ggc.edu/policies/docs/GGC-Campus-Map-Public-Forum-Areas.pdf (last visited Apr. 23, 2017).

clearly say so to their students. After all, this Court "must assess regulatory language in the real world context in which the persons being regulated will encounter that language." *Coll. Republicans at S.F. State Univ. v. Reed*, 523 F. Supp. 2d 1005, 1020 (N.D. Cal. 2007). No student who reads this policy will know Defendant Dowell promised he can speak in other areas. Nor is there any evidence Defendants have even informed all GGC officials, much less students, of her assurances. Cardinalli Aff. ¶¶ 5–7, ECF No. 21-3. And it is utterly unrealistic to expect a student to download her affidavit from Pacer, keep it in his back pocket, and show it to any official who has literally not "gotten the memo."

Also, Defendant Dowell's assurances will not bind GGC since they are not tied to any policy language. Nothing stops GGC from interpreting its policy differently, especially if someone else replaces her. If Plaintiffs (let alone other students) were to face problems using other areas of campus, the plea, "Well, Ms. Dowell said we could," would be unavailing on campus and in court. As Defendants "are not bound to their pronouncements," "a reasonable expectation exists that this wrong will be repeated." *ACLU*, 999 F.2d at 1495.

Defendants' amended Speech Zone Policy still only permits student speech for a small fraction of the week. Granted, it has increased from 10% to about 31.25%, as the zones are open from "9:00 a.m. to 7:30 p.m. Monday through Friday." Dowell Aff. Attach. A § B. But they are still closed the entire weekend, just as they were originally. Am. Compl. ¶ 115. It is telling that GGC's Student Center is open from 7:00 a.m. to 10:00 p.m. every day (*i.e.*, 62.5% of the week).[8]

---

[8]  Ga. Gwinnett Coll., *GGC Hours, available at* http://www.ggc.edu/about-ggc/hours.html (last visited Apr. 23, 2017).

During those hours, students pass in and out of the Student Center regularly, but inexplicably they may only engage in expression with other students in the speech zones for half that time, even though the Sidewalk Speech Zone adjoins that building. *Id.* ¶ 117. So Defendants give students literally twice as much time per week to play ping-pong as they do to exercise their fundamental constitutional rights. That is, the new policy may have lessened the degree of one problem, but the fundamental issue—restricting student speech to small areas for limited amounts of time—has not changed. Thus, this case is not moot.

### 2. Defendants' amended Speech Zone Policy still grants unbridled discretion, making it unconstitutional in any forum.

Defendants' original Speech Zone Policy granted many layers of unbridled discretion, rendering it content- and viewpoint-based and illegal in any forum. Pls.' MTD Resp. at 11–14, 30–31. The amended one does the same. So the "gravamen" of the Complaint remains unchanged. *Ne. Fla.*, 508 U.S. at 662.

First, Defendants still have unbridled discretion when reviewing literature students wish to distribute. To reserve the speech zone, "[a]ny written materials that will be distributed . . . must be attached to the Forum Reservation Request Form and submitted to GGC's Office of Student Integrity." Dowell Aff. Attach. A § E. The policy says nothing about how officials are to review this literature, just like the original policy. Am. Compl. ¶¶150–53. The *Student Code of Conduct* still bans "[c]irculating any advertising media without approval from proper College officials." Dowell Aff. Attach. B § 3.J. This repeats the original policy verbatim and includes all flyers. Am. Compl. ¶¶ 189, 195.

Second, Defendants still have unbridled discretion over the speech zones'

boundaries. In the original policy, they laid out fairly precise boundaries for each zone, Am. Compl. ¶¶ 117, 121, though they could modify them at will. *Id.* ¶¶ 133–35; Pls.' MTD Resp. at 14. The second policy removes all references to those boundaries, describing these areas as simply Zones A and B and referencing a map showing their location. Dowell Aff. Attach. A § B. But the map just uses two arrows to identify the general vicinity of these zones. *See supra* note 7. Thus, students have no way of knowing if Zone B includes just the intersection of the sidewalks where the arrow's tip is located; just the sidewalk and, if so, at what points along the sidewalk it begins and ends; or also the adjoining lawns. Similarly, they have no way of knowing if Zone A includes the entire patio, a portion of it (*e.g.*, just where the arrow's tip is located), some of the parking lot area, or some of the interior spaces. The boundaries are now up to the discretion of each official with no objective standards.

Third, Defendants retain unbridled discretion over which events must reserve the speech zones. Under the policy, events "that [are] expected to consist of 30 or more persons" must reserve the zones. Dowell Aff. Attach. A § C.I. But it does not specify whether this means thirty attendees, thirty protestors, or some combination, leaving this to the whim of officials. To the extent that it includes protestors, it invites a heckler's veto. *See* Pls.' MTD Resp. at 19–22.

Fourth, Defendants still have unbridled discretion over where students can speak outside the speech zones. *Id.* at 12. Under the amended policy, if a student wants to use the speech zone when it is already reserved, GGC "must provide a reservation . . . at an alternate location, alternate date, or alternate

time." Dowell Aff. Attach. A § E.3. But nothing outlines which one must be offered, whether the official must let the applicant choose, or what alternatives must be presented. Defendants also now "reserve[] the right," without any objective criteria, to move certain groups to the speech zones. *Id.* § C.II.

As in the original policy, at each of these levels, nothing provides the "narrow, objective, and definite standards" the First Amendment requires. *Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 131 (1992). Even if the amended policy offers fewer opportunities for unbridled discretion, that just means it "disadvantage[s Plaintiffs] to a lesser degree." *Ne. Fla.*, 508 U.S. at 662. But "it [still] disadvantages them in the same fundamental way," meaning the "gravamen" of Plaintiffs' complaint has not changed, and Plaintiffs' declaratory and injunctive relief claims are not moot. *Id.*

### 3. Defendants' amended Speech Zone Policy still lacks protections to prevent viewpoint and content discrimination.

The unbridled discretion afforded by the amended Speech Zone Policy, like the original one, permits Defendants to discriminate against student speech on the basis of its content and viewpoint. Defendants' original policy lacked affirmative protections against such discrimination. Pls.' MTD Resp. at 16–18, 31. The amended one does the same. Nothing in it prevents Defendants from manipulating the speech zones' boundaries, applying disparate standards as to which events must reserve the zones, making decisions based on the content or viewpoint of students' to-be-distributed literature, or selectively opening areas outside the zones for favored viewpoints. *See supra* Part II.B.2.

Defendants may point to the now multiplied assurances that they will not

consider content or viewpoint. But no matter how many times it is repeated, this amounts to nothing more than a promise to obey the law, not a "*precise and objective*" limit on administrators' discretion. *Lady J. Lingerie v. City of Jacksonville*, 176 F.3d 1358, 1362 (11th Cir. 1999); Pls.' MTD Resp. at 17–18.

### 4. Defendants' amended Speech Zone Policy still imposes illegal prior restraints on student speech.

The original Speech Zone Policy was an illegal prior restraint in what are at least designated public fora for students. Pls.' MTD Resp. at 22–40. The amended one still sets many (if not all) of those areas off-limits to student speech (depending on the undefined size of Zones A and B). *See supra* Part II.B.1–2.

Like the original policy, the amended one contains features that courts have repeatedly found to be not narrowly tailored. It still prevents even a single student from leafleting outside the speech zones. *See supra* Part II.B.1. It still limits spontaneous speech, allowing it during the week only if students use the speech zones and make sure no more than thirty "persons"—however officials choose to define that term—are involved. Dowell Aff. Attach. A §§ B, C.I. Spontaneous speech remains effectively banned on the weekends when the zones are closed or when others are using them. *Id.* Spontaneous leafleting is banned as students must still get prior approval. Dowell Aff. Attach. B § 3.J. And this policy still limits student speech to these zones, unless officials use their unbridled discretion to open other areas. *See supra* Part II.B.1–2.

Defendants now "reserve[] the right" to move certain groups to the speech zones to avoid safety, crowd control, and disruption issues. Dowell Aff. Attach. A § C.II. But even this is not narrowly tailored as it does not "target[] and

eliminate[] no more than the exact source of the 'evil' it seeks to remedy." *Frisby v. Schultz*, 487 U.S. 474, 485 (1988). A narrowly tailored policy would authorize officials to move only events that actually imperiled these interests, not impose an arbitrary numerical limit that allows even peaceful, non-disruptive events to be moved and that invites a heckler's veto to the extent that Defendants count opposing voices among the thirty.

In at least each of these ways, the amended policy repeats or exacerbates the flaws that rendered the original one not narrowly tailored. *See* Pls.' MTD Resp. at 31–34. Thus, the "gravamen" of Plaintiffs' complaint has not changed, and this case is not moot. *Ne. Fla.*, 508 U.S. at 662.

### 5. Defendants' amended Speech Zone Policy is still vague.

Defendants' original Speech Zone Policy violated the stringent vagueness test in the free speech context, largely by granting so much discretion. Pls.' MTD Resp. at 43–44. The amended policy repeats this error and goes further, partly by adding ambiguity to the speech zones' boundaries. *See supra* Part II.B.2.

Now, while speaking spontaneously, students must keep a vigilant count of the nearby persons. Dowell Aff. Attach. A § C.II. But they have no idea whether to count just themselves as the organizers, just the eager listeners, or also any hecklers because the policy does not specify. But whenever they reach this magic number, they must "provide the College with as much notice as circumstances reasonably permit." *Id.* Does this mean a solitary speaker must interrupt himself to call officials once Person #30 arrives? Does this mean he should just self-report his own violation later? No one knows. Nor does anyone know

what this notice should contain or who gets to judge what "circumstances reasonably permit[ted]." *Id*. But it is clear that this policy is vague. *Wollschlaeger v. Gov. of Fla.*, 848 F.3d 1293, 1319–23 (11th Cir. 2017) (en banc) (finding ban on "unnecessarily harassing" to be vague).

Moreover, as these five sets of flaws remain, Defendants' amended policy continues to pose the same overbreadth and free exercise problems as the original one. Pls.' MTD Resp. at 40–43. As it "leaves objectionable features of the prior [policy] undisturbed," Plaintiffs' claims are not moot. *CAMP*, 219 F.3d at 1311. The "gravamen of [Plaintiffs'] major constitutional complaints—vagueness, overbreadth, [content and viewpoint discrimination], and invalid time, place and manner restrictions—about the [student speech] restrictions are nearly identical, unresolved, and not fundamentally altered." *Horton*, 272 F.3d at 1329. "Thus, a live controversy remains." *Id.*

<u>CONCLUSION</u>

To moot this case, Defendants must prove both that "there is no reasonable expectation that the alleged violation will recur," and that "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Seay*, 397 F.3d at 947. They did neither. By changing their policies only after being sued and years after being warned, by continuing to defend their prior policies, and by repeating the flaws of the original ones, they have fallen far short of "ma[king] it absolutely clear that the allegedly wrongful behavior [can]not reasonably be expected to recur." *Aladdin's Castle*, 455 U.S. at 289 n.10. Thus, Plaintiffs respectfully request that this motion be denied.

Respectfully submitted this the 24th day of April 2017,

/s/ Travis C. Barham

DAVID A. CORTMAN
Georgia Bar No. 188810
TRAVIS C. BARHAM
Arizona Bar No. 024867
Georgia Bar No. 753251
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Rd. NE,
Suite D-1100
Lawrenceville, Georgia 30043
Telephone: (770) 339–0774
Facsimile: (770) 339–6744
dcortman@ADFlegal.org
tbarham@ADFlegal.org

M. CASEY MATTOX*
Virginia Bar No. 47148
ALLIANCE DEFENDING FREEDOM
440 1st Street, NW, Ste. 600
Washington, D.C. 20001
Telephone: (202) 393–8690
Facsimile: (202) 347–3622
cmattox@ADFlegal.org

* Admitted *pro hac vice*.

*Attorneys for Plaintiffs*

## C<span style="font-variant: small-caps">ERTIFICATE OF</span> F<span style="font-variant: small-caps">ORMATTING</span>

I hereby certify that the foregoing document has been prepared in Century Schoolbook, thirteen point font and fully complies with the font and point selection requirements of L.R. 5.1(B), N.D. Ga.

Respectfully submitted on this the 24th day of April, 2017.

/s/ Travis C. Barham
Travis C. Barham
*Attorney for Plaintiffs*

I hereby certify that on the 24th day of April, 2017, I electronically filed a true and accurate copy of the foregoing document with the Clerk of Court using the CM/ECF system, which automatically sends an electronic notification to the following attorneys of record:

> CHRISTOPHER CARR
> Attorney General
> KATHLEEN M. PACIOUS
> Deputy Attorney General
> DEVON ORLAND
> Senior Assistant Attorney General
> ELLEN CUSIMANO
> Assistant Attorney General
> 40 Capitol Square, Southwest
> Atlanta, Georgia 30334-1300
> Telephone: (404) 463–8850
> Facsimile: (404) 651–5304
> dorland@law.ga.gov
> ecusimano@law.ga.gov
>
> *Attorneys for Defendants*

Respectfully submitted on this the 24th day of April, 2017.

> */s/ Travis C. Barham*
> Travis C. Barham
> *Attorney for Plaintiffs*