IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CHIKE UZUEGBUNAM and JOSEPH BRADFORD, <br><br> Plaintiffs, <br><br> v. <br><br> STANLEY C. PRECZEWSKI, et al., <br><br> Defendants. | Civil Action No.: <br> 1:16-cv-04658-ELR |

## REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR MOOTNESS

COME NOW Defendants in the above styled civil action, by and through the undersigned counsel, the Attorney General for the State of Georgia, and respectfully submit this reply brief in support of their Motion to Dismiss for Mootness, showing this Court the following:

### I.     ARGUMENT AND CITATION TO AUTHORITIES

**A. Defendants have met their initial burden of showing that GGC's former policies have been "unambiguously terminated."**

In a mootness case involving the government's voluntary cessation, the government has the initial burden of showing that the policy has been "unambiguously terminated." Doe v. Wooten, 747 F.3d 1317, 1323 (11th Cir. 2014). Contrary to Plaintiffs' contention, Defendants have sufficiently shouldered this initial burden. (Doc. 27, pp. 13-14). As explained in Defendants' Motion to Dismiss for Mootness (Doc. 21-

1), GGC's former policies are no longer in effect, and have, instead, been superseded in full by the new policies, which GGC formally adopted and effectuated on February 28, 2017. GGC then publicly published the new policies on its website and has conducted extensive training for its staff on the new policies. (Doc. 21-2, p. 3). Moreover, GGC's evidence shows that it does not intend to reinstate the former policies. (Id. at p. 4). Based on the foregoing, Defendants have met their initial burden of showing that the former policies have been "unambiguously terminated." Indeed, it is difficult to imagine what additional evidence GGC could proffer to support this conclusion.

Nevertheless, Plaintiffs contend that the former policies have not been unambiguously terminated for the following three reasons: (1) there is no evidence that GGC engaged in "substantial deliberation" before it revised the policies, (2) the timing of the revisions is suspect, and (3) the new policies are still unconstitutional. Each of these three arguments—and the reasons the Court should reject them—are discussed below, in turn.

### 1. GGC's new policies are the result of substantial deliberation.

The record shows that GGC engaged in substantial deliberation before adopting the new policies. GGC's evidence includes the sworn statements of its chief legal counsel, Marc Cardinalli, that GGC has approved and adopted the revised policies; that the revised policies superseded and replace the former policies; and that since the adoption of the new policies, four separate training sessions on the new policies have been conducted. (Doc. 21-3). These separate and extensive trainings of a large number

of GGC personnel by legal counsel are a strong indication that GGC does not intend to revert back to its former policies.

In addition, GGC's evidence also includes the sworn statements of its Director of Student Integrity, Aileen Dowell, the person at GGC who is responsible for implementing policy changes. (Doc. 21-2). Ms. Dowell states that GGC's cabinet approved of and adopted the revised policies on February 28, 2017, and she identifies the specific changes that were made. (Id.). She also states that the revised policies are available to the public and have been published on GGC's website. (Id.). Again, these are strong indicia that GGC will not revert back to its former policies.

In short, the evidence shows that GGC did not hastily or haphazardly throw together the new policies for the purpose of undermining this Court's jurisdiction. Instead, the new policies are the product of reasoned and collaborative efforts to provide greater protection to the First Amendment rights of GGC's students.[1]

---

[1] It should be noted that, although several Eleventh Circuit cases explain that the change must be the result of "substantial deliberation," none of those cases define "substantial deliberation" or set forth any relevant, substantive analysis of what constitutes "substantial deliberation." See, e.g., Troiano v. Supervisor of Elections, 382 F.3d 1276 (11th Cir. 2004); Jews for Jesus v. Hillsborough County Aviation Auth., 162 F.3d 627 (11th Cir. 1998).

### 2. GGC promptly revised the policies once they were notified that they may have been unconstitutionally applied.[2]

Plaintiffs also criticize GGC's timing in revising the policies. Specifically, Plaintiffs repeatedly lament that: (1) GGC did not revise the policies until after Plaintiffs filed this lawsuit, and (2) GGC could have and should have revised the policies in response to the letter they sent in 2013. While the timing of revisions may be relevant in determining whether the policy has been unambiguously terminated, see, e,g., Harrell v. Fla. Bar, 608 F.3d 1241, 1266 (11th Cir. 2010), timing alone does not demonstrate that a defendant is likely to resume the challenged practice. See, e.g., Bloedorn v. Keel, 2012 U.S. Dist. LEXIS 61737 (S.D. Ga. May 2, 2012) (rejecting the plaintiff's argument that the fact that the defendant changed its policy during the litigation of the case and acknowledged that the change was intended to address issues raised in the litigation were sufficient to demonstrate that the policy change was for the purpose of avoiding the court's jurisdiction). Also, as discussed in more detail below, Plaintiffs have not pointed to any credible evidence that GGC revised the policies solely to obtain a dismissal of the case or that it intends to revoke or not enforce the new policies once the litigation is terminated.

Moreover, the cases Plaintiffs rely on in support of their "timing" argument do not involve situations identical to this case, nor do they compel a conclusion that the challenged conduct in this case will likely recur. See Sheely, 505 F.3d at 1184 (involving

---

[2] Defendants deny that the former policies, or application thereof, were unconstitutional.

a private, not public, defendant, and thus not applying rebuttable presumption that the defendant would adhere to the voluntary cessation, and finding that voluntary cessation by the private defendant was solely a "litigation strategy" urged by new counsel because it occurred immediately after new counsel was retained); <u>Jager</u>, 862 F.2d at 833-34 (not applying the rebuttable presumption and finding that the defendant school district would likely return to prior challenged policy because it never asserted that it would not do so, the voluntary cessation was never adopted as a formal policy, and the superintendent committed only to "encouraging" principals to adhere to the new policy); <u>Nat'l Adver. Co. v. City of Fort Lauderdale</u>, 934 F.2d 283, 286 (11th Cir. 1991) (rebuttable presumption not applied, and timing of voluntary cessation not cited as a basis for denying motion to dismiss); <u>Doe v. Wooten</u>, 747 F.3d 1317 (11th Cir. 2014) (declining to apply the presumption because after "years of litigation . . . the BOP suddenly changed its position days before Mr. Doe's trial was set to begin," the BOP had engaged in a widespread pattern of transferring Doe, and the BOP had never stated that Doe would not be transferred back to a high-security facility); <u>Rich v. Fla. Dep't of Corr.</u>, 716 F.3d 525 (11th Cir. 2013) (Florida implemented a kosher food plan *only* at the plaintiff's prison and two weeks before oral argument and never promised not to resume the prior practice); <u>Nat'l Ass'n of Bds. of Pharm. v. Bd. of Regents</u>, 633 F.3d 1297 (finding that, even though the professor had retired, he still planned on teaching the review course at issue, and that the school had previously reneged on similar assurances that the offending conduct had stopped).

As for Plaintiffs' argument that GGC should have revised its policies in response to the letter they sent in 2013 (Doc. 27, p. 16), this argument also should be rejected. Plaintiffs' letter failed to identify a single instance in which GGC's former policies had actually suppressed its students' free speech rights. (Doc. 1-16). In fact, from the time Plaintiffs' counsel sent the letter to the present, Plaintiffs have identified only one instance in which GGC's policies were enforced in a manner that allegedly violated students' constitutional rights (i.e., their own). Plaintiffs' letter also appears to have been a form letter sent to multiple colleges. (Id. at p. 3).[3] Under these facts, it is not reasonable to conclude that GGC's revisions are insincere merely because it did not revise the policies upon receipt of the 2013 form letter.

Finally, in a similar vein, Plaintiffs contend that GGC did not unambiguously terminate the challenged conduct because such conduct was a "continuing practice" rather than an isolated incident.[4] (Doc. 27, p. 20) While courts may be reluctant to presume that a defendant has abandoned a practice if that practice is shown to be well-settled and ongoing, see Troiano, 382. F.3d at 1285, no such showing can be made here.

---

[3] Specifically, at the top of the third page, the letter refers to ABAC, which is the acronym for Abraham Baldwin Agricultural College. (Doc. 1-16, p. 3).

[4] Other than Atheists of Fla., none of the cases cited by Plaintiffs in support of this argument involved the application of the rebuttable presumption in favor of government actors. See Sheely v. MRI Radiology Network, P.A., 505 F.3d 1173 (11th Cir. 2007) (involving a private defendant); Secretary of Labor, U.S. Dept. of Labor v. Burger King Corp., 955 F.2d 681 (11th Cir. 1992) (involving a private defendant and decided before the presumption was established); Hall v. Bd. of Sch. Comm'rs of Conecuh Cnty., 656 F.2d 999 (5th Cir. 1981) (decided prior to recognition of presumption).

Indeed, other than the incident in which Plaintiff Uzuegbunam was allegedly told to cease his open air speaking, Plaintiffs have not identified any other instance in which GGC applied its former policies in a manner that allegedly violated the constitutional rights of its students. Thus, the fact that the incident with Plaintiff Uzuegbunam was an isolated event suggests that there was no settled and ongoing practice that would foreclose a finding that GGC has abandoned the former policies. Atheists of Fla., Inc. v. City of Lakeland, 713 F.3d 577, 594 (11th Cir. 2013).

### 3. GGC's new policies are not unconstitutional.

Plaintiffs also contend that GGC's new policies do not render this case moot because they "pose[] many of the same constitutional problems." (Doc. 27, p. 25). They argue that, as a result, this case is akin to Horton v. City of Augustine, 272 F.3d 1318 (11th Cir. 2011), with the result that Defendants' motion for mootness should be denied. Plaintiffs' interpretation of the new policies, however, is entirely off the mark, such that their attempt to analogize this case with Horton fails.

Horton involved a constitutional challenge to a city ordinance that prohibited street performances in a four-block area of the defendant city. 272 F.3d at 1321. The city amended the challenged ordinance pending appeal and sought dismissal on the grounds that the amendment rendered the case moot. Id. at 1324-26. The court denied the motion, observing that, while the amendments made some changes in the law, they "left in place both the statutory framework and the bulk of the language" that Horton was challenging and, thus, "the majority" of his challenges remained "unresolved." Id. at

1328. Indeed, the court pointed to numerous examples of statutory terms and provisions that Horton specifically challenged but which were not changed by the amendments. Id. at 1328-29.

The same cannot be said of the revised policies in the case at bar. Contrary to Plaintiffs' assertion, the new speech policy does not "still limit[] student speech to two zones" that are open approximately 10% of the week and require a permit. (Doc. 27, p. 25). Instead, the new speech policy explicitly states that it "in no way prohibits members of the GGC community from engaging in conversations on campus" and that "[m]embers of the GGC community may distribute non-commercial pamphlets, handbills, circulars, newspapers, magazines, and other written materials on a person-to-person basis in outdoor areas of the campus." (Doc. 21-2, pp. 7, 10). Under the new policy, only two categories of individuals are required to confine their expressive activities to the Public Forum Areas after first obtaining a permit: (1) members of the GGC community who plan to engage in expressive activity in a group of thirty or more people, and (2) individuals or groups of people who are not enrolled at or employed by GGC. (Id. at pp. 8-9). Plaintiffs do not fall within either of these two categories. As a result, they may speak and distribute literature anywhere on campus and at any time.[5] Plaintiffs,

---

[5] Plaintiffs insist that Defendants' interpretation of the new policy as allowing students to speak freely outside of the speech zones without a permit contradicts Defendants' assertion in their Motion to Dismiss that the areas outside of the free speech zones are nonpublic fora. (Doc. 27 at p. 26). However, Defendants' nonpublic fora categorization was with respect to the *prior* policy, which, by its terms, confined student speech solely to the two free speech zones.

therefore, do not and cannot demonstrate how the new policy could reasonably be interpreted as failing to substantially address their concerns and complaints.

### B. Plaintiffs fail to provide any evidence that GGC is likely to return to its former policies

Since Defendants have satisfied their initial burden, a presumption exists that the former policies have been unambiguously terminated. Thus, the controversy in this case "will be moot in the absence of some *reasonable basis* to believe that the policy will be reinstated if the suit is terminated." Doe v. Wooten, 747 F.3d 1317, 1322 (11th Cir. 2014).

Here, Plaintiffs have not provided any reasonable basis for believing that GGC will reinstate its former policies once this lawsuit ends. In particular, they do not point to any evidence that, since the adoption of the new policies, any student has been improperly denied the ability to exercise their First Amendment rights. Rather, Plaintiffs offer nothing but pure speculation and conjecture.

Plaintiffs also decry the fact that Defendants have filed motions to dismiss that maintain the validity of their conduct, thus insinuating that Defendants cannot be trusted to enforce the new policies. (Doc. 27, p. 9). In support of this claim, Plaintiffs attempt to portray Defendants as having knowingly maintained and defended a policy of systematically suppressing the free expression rights of its students—a policy which, according to Plaintiffs, Defendants will resume upon termination of this litigation. Such a portrait finds no support in the evidence. On the contrary, the sworn statements

of GGC officials make it clear that, once they learned of the potential violation of a student's rights, they promptly took action to review, assess, and revise the policies so as to provide all of their students with maximal First Amendment protections.

## II. CONCLUSION

"[I]n the absence of some reasonable basis to believe that the policy will be reinstated if the suit is terminated," voluntary cessation by a government actor will moot a claim. See Troiano, 382 F.3d at 1285. In light of the evidence submitted by Defendants, it cannot reasonably be concluded here that GGC's new policies do not address Plaintiffs' complaints – indeed, it grants them the precise relief they requested. Moreover, Plaintiffs have not shown that Defendants intend on withdrawing or changing any aspect of the new policies, and Plaintiffs' mere speculation that they are likely to do so "is no substitute for concrete evidence of secret intentions." See Nat'l Adver. Co., 402 F.3d at 1334 (11th Cir. 2005). Plaintiffs' requests for declaratory and injunctive relief are, accordingly, moot and any decision on the merits would amount to an impermissible advisory opinion. See Troiano, 382 F.3d at 1282. Defendants therefore respectfully request that Plaintiffs' requests for declaratory and injunctive relief be dismissed.

CHRISTOPHER M. CARR     112505
Attorney General

KATHLEEN M. PACIOUS     558555
Deputy Attorney General

[SIGNATURES CONTINUED ON THE FOLLOWING PAGE]

ROGER CHALMERS 118720
Senior Assistant Attorney General

*/s/ Ellen Cusimano*
ELLEN CUSIMANO 844964
Assistant Attorney General

Please address all communications to:

Ellen Cusimano
Assistant Attorney General
Department of Law, State of Georgia
40 Capitol Square, S.W.
Atlanta, Georgia 30334-1300
Telephone: (404) 657-4355
Facsimile: (404) 651-5304
E-mail: ecusimano@law.ga.gov

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing document has been prepared in Times New Roman (14 point) and fully complies with the font and point selection requirements of LR 5.1(B), N.D. Ga.

*/s/ Ellen Cusimano*
ELLEN CUSIMANO

# CERTIFICATE OF SERVICE

I hereby certify that on this date I have electronically filed the foregoing **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR MOOTNESS** using the CM/ECF system which will automatically send electronic mail notification of such filing to counsel of record as follows:

**David A. Cortman**
**Travis C. Barham**
**Alliance Defending Freedom**
**1000 Hurricane Shoals Rd. NE, Suite D-1100**
**Lawrenceville, GA 30043**

**Casey Mattox**
**Alliance Defending Freedom**
**440 1st Street, NW, Ste. 600**
**Washington, D.C. 20001**

I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants: **NONE**

This 22nd day of May, 2017.

*/s/ Ellen Cusimano*
ELLEN CUSIMANO