IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CHIKE UZUEGBUNAM, *et al.*,

            *Plaintiffs,*

    v.

STANLEY C. PRECZEWSKI, *et al.*,

            *Defendants.*

Case No. 1:16-cv-04658-ELR

THE HONORABLE ELEANOR L. ROSS

JOINT PRELIMINARY REPORT & DISCOVERY PLAN

1. **Description of Case:**

    **(a)** **Describe briefly the nature of this action.**

    Plaintiffs Chike Uzuegbunam and Joseph Bradford alleged that Defendants (officials and employees of Georgia Gwinnett College) violated their rights under the Free Speech and Free Exercise Clauses of the First Amendment and the Due Process and Equal Protection Clauses of the Fourteenth Amendment when Defendants enforced the College's speech zone and speech code policies.

    **(b)** **Summarize, in the space provided below, the facts of this case. The summary should not be argumentative nor recite evidence.**

        **(1)** **Plaintiffs Summary**

    In July 2016, Chike Uzuegbunam, then a student at Georgia Gwinnett College, decided to share his faith by engaging in one-on-one conversation and literature distribution on campus. He chose an expansive concrete plaza outside the campus library, a hub of student pedestrian activity and conversations. To communicate, Mr. Uzuegbunam distributed handouts to passing students and others willing to accept them, and he talked to anyone interested.

He did not force his pamphlets on anyone, harass those who were uninterested, force anyone to engage in dialogue, or speak louder than a conversational tone of voice.

Shortly after Mr. Uzuegbunam began, Defendant Perry, a campus security officer, stopped him and warned him that he could not distribute written materials outside the two speech zones. As she explained, Defendants' Speech Zone Policy required students to reserve one of two speech zones that comprised one patio and one sidewalk—about 0.0015% of campus. These two zones were available only about 10% of the week: two to four hours each weekday and closed on the weekend. To engage in expression at other times or places, students needed a permit. To get such a permit, students had to request one at least three days in advance, and the Policy gave Defendants unbridled discretion to decide who could speak, when they could speak, and what materials they could give to passersby. If a student reserved a speech zone, the Policy prohibited that student from using the zones again for at least 30 days, even if no one else reserved them during that period.

After speaking with Defendant Perry, Mr. Uzuegbunam and a friend visited the Office of Student Integrity and spoke with Defendant Dowell, its director. Defendant Dowell agreed that Mr. Uzuegbunam could not distribute literature outside the speech zones or without a reservation. When asked, she also stated that Mr. Uzuegbunam could not have one-on-one conversations outside those zones. Fearing discipline for violating this policy, Mr. Uzuegbunam stopped distributing literature or engaging in public expression about his faith outside

the speech zones.

Mr. Uzuegbunam instead reserved one of the two speech zones to share his faith on August 25, 2016. As required, he submitted to the Office of Student Integrity for approval two religious pamphlets he intended to distribute. On the day he reserved, he and a friend went to the speech zone he reserved and stood in an area that would not block any building entrances or create any congestion. Mr. Uzuegbunam's friend prayed and distributed the pamphlets while Mr. Uzuegbunam shared his religious beliefs. Mr. Uzuegbunam did not carry any signs or amplify his voice. Nor did he use any inflammatory rhetoric or attack any individual. He simply spoke about how Jesus Christ died on the cross and rose from the dead to provide salvation and eternal life to all.

After about 20 minutes, Defendant Hughes, a campus police lieutenant, drove up and asked Mr. Uzuegbunam to stop speaking so the two of them could talk. Defendant Hughes declared, "we just got some calls on you" and asked what Mr. Uzuegbunam was doing. Mr. Uzuegbunam explained that he had reserved the speech zone and was "preaching the love of Christ."

Defendant Hughes and Defendant Lawler (a campus police sergeant who later arrived on the scene) then warned Mr. Uzuegbunam that he had engaged in "disorderly conduct" because his speech was disturbing the peace and comfort of those in the speech zone. The College's Speech Code defined "disorderly conduct" as any "behavior which disturbs the peace and/or *comfort* of person(s)" on campus, and it included no guidelines or standards. But Defendant Lawler explained that Mr. Uzuegbunam's speech was disorderly conduct because it was

disturbing others, as shown by the complaints the officials had received. She explained that any complaint converts expression into disorderly conduct. And Defendant Hughes ordered Mr. Uzuegbunam to stop speaking publicly and return to the Office of Student Integrity for permission to speak, permission he did not think the office would grant.

After the run-ins with Georgia Gwinnett officials, Mr. Uzuegbunam stopped any efforts to share religious literature publicly or engage in open-air speaking about his faith, though he desired to do so. Mr. Joseph Bradford, another student at Georgia Gwinnett College at the time, self-censored after learning how Defendants had treated Mr. Uzuegbunam.

Since then, Mr. Uzuegbunam graduated, and Mr. Bradford no longer attends the College. In 2017, Defendants revised their policies, and Plaintiffs do not challenge these revised policies.

### (2)   Defendants' Summary

Plaintiffs challenge the constitutionality of Georgia Gwinnett College's ("GGC") former speech policy and former disorderly conduct policy. GGC revised both policies on February 28, 2017—i.e., approximately two months after Plaintiffs filed this lawsuit. Fifteen months later, on May 25, 2018, this Court ruled that GGC's policy changes mooted Plaintiffs' request for injunctive relief. Thus, since then, the focus of the litigation has been on whether Plaintiffs are entitled to recover nominal damages for alleged violations of GGC's former speech policy and disorderly conduct policy.

The express purpose of GGC's former speech policy was to "provid[e] a fo-

rum for free and open expression of divergent points of view by students, student organizations, faculty, staff and visitors," while simultaneously fostering a "secure learning environment which allows members of the community to express their views in ways which do not disrupt the operation of the College." To that end, the former policy provided all individuals with two speech zones on campus for "speeches, gatherings, distribution of written materials, and marches." The policy applied only to, and limited only, those types of public expression, and did not apply to or limit in any manner one-on-one conversations between individuals, whether planned or spontaneous.

For "speeches, gatherings, distribution of written materials, and marches," the speech zones were available "from 11:00 a.m. to 1:00 p.m. and 5:30 p.m. to 7:30 p.m., Monday through Thursday, and 11:00 a.m. to 1:00 p.m. on Friday"— i.e., eighteen hours each week. Individuals could utilize the speech zones at least once every thirty days. Additionally, upon written request, the speech policy also allowed individuals to engage in speeches, gatherings, distribution of written materials, and marches in other areas and during different times. To use a speech zone for any of these purposes (or to engage in any of such expressive activities outside of the zones), individuals were required to submit a "free speech form," along with any publicity materials, to a designated Student Affairs official three business days in advance. The official was required to authorize the expressive activity as long as specified content-neutral requirements were satisfied, including that the requested speech does not rise to the level of disorderly conduct. GGC's disorderly conduct policy defines such

conduct as "behavior which disturbs the peace and/or comfort of person(s)."

In late July 2016, Plaintiff Uzuegbunam stood outside of the GGC library, which is not a speech zone, and distributed religious literature to the pedestrian traffic. Because Plaintiff Uzuegbunam had not submitted a request to distribute the literature, Defendant Shenna Perry (a Campus Safety/Security Officer for Campus Police at GGC) asked him to stop and guided him to the library to learn about GGC's speech policy.

The following month (August 2016), Plaintiff Uzuegbunam submitted a speech zone request for use of one of the zones on August 25, 2016; September 8, 2016; and September 22, 2016, from 10:00 A.M. to 4:00 P.M. He also attached to the request a religious tract that he intended to distribute. GGC approved all three requests. Thus, on August 25, 2016, Plaintiff Uzuegbunam arrived at the speech zone outside of the food court, where students were congregating to eat and socialize. While Plaintiff Uzuegbunam's friend prayed and distributed literature, Plaintiff Uzuegbunam stood on a stool and engaged in open air speaking for approximately 20 minutes. Then Defendant Corey Hughes (a GGC lieutenant) approached him and asked him to stop his open-air speaking, explaining that several people had called and complained. As a result, Lt. Hughes explained that Plaintiff Uzuegbunam was engaging in disorderly conduct and, hence, could be disciplined under the Student Code of Conduct if he did not cease his open-air speaking. Plaintiff Uzuegbunam complied and ceased the open-air speaking. Since then, Plaintiffs allegedly have not attempted to express their religious views while on campus.

Plaintiff Uzuegbunam's expressive activity on GGC's campus was never restricted because of its content.

As to Plaintiff Bradford, he would like to engage in expressive activities similar to those that Plaintiff Uzuegbunam engaged in on August 25, 2016. He has not, however, attempted to do so because he allegedly "fears that the expression . . . would expose him to enforcement and disciplinary action."

**(c)     The legal issues to be tried are as follows:**

**(1)     Plaintiffs' Response:**

1. Did Defendants violate the First and/or Fourteenth Amendments when they enforced their Speech Zone Policy against Mr. Uzuegbunam and intimidated Mr. Bradford into self-censoring?

2. Did Defendants violate the First and/or Fourteenth Amendments when they enforced their Speech Code Policy against Mr. Uzuegbunam and intimidated Mr. Bradford into self-censoring?

**(2)     Defendants' Response:**

1. Does Plaintiff Bradford lack standing to pursue his claims given that he never engaged in any expressive activity and GGC's policies were never enforced against him?

2. In this action, which is now limited to the nominal damages claims brought by each Plaintiff based on GGC's enforcement of the former speech and disorderly conduct policies, will Plaintiffs' claims survive a mootness challenge when Defendants transfer to each Plaintiff the entirety of the $1 in nominal damages that they could receive by a judg-

ment entered in their favor in the action?

3. Can Plaintiffs prevent their claims from becoming moot by refusing to receive or accept the $1 in nominal damages when such amounts are transferred to them?

4. Did any of the Defendants violate Plaintiff Uzuegbunam's rights or Plaintiff Bradford's rights under the First and/or Fourteenth Amend-ments?

5. If either Plaintiff prevails on his claim, is he entitled to recover attorneys' fees and, if so, what amount of attorneys' fees would be recoverable for a nominal damages recovery in this action where the claims for injunctive relief and modification of the GGC policies was mooted shortly after the lawsuit was filed?

**(d)    The cases listed below (include both style and action num-ber) are:**

    **(1)    Pending Related Cases:**

        Not applicable.

    **(2)    Previously Adjudicated Related Cases:**

        Not applicable.

**2.    This case is complex because it possesses one or more of the fea-tures listed below (please check):**

__X__ (1) Unusually large number of parties

_____ (2) Unusually large number of claims or defenses

_____ (3) Factual issues are exceptionally complex

_____ (4) Greater than normal volume of evidence

__X__ (5) Extended discovery period is needed

_____ (6) Problems locating or preserving evidence

_____ (7) Pending parallel investigations or action by government

_____ (8) Multiple use of experts

_____ (9) Need for discovery outside United States boundaries

_____ (10) Existence of highly technical issues and proof

_____ (11) Unusually complex discovery of electronically stored information

The parties do not believe the legal issues in this case are complex. But because of the age of the case, the large number of parties, and the limitations created by the continuation of the COVID-19 pandemic, the parties anticipate needing additional time for discovery, as explained below in Section 10.

**3. Counsel:**

**The following individually-named attorneys are hereby designated as lead counsel for the parties:**

Plaintiff: Mr. Tyson Langhofer

Defendant: Ms. Ellen Cusimano

**4. Jurisdiction:**

Is there any question regarding this Court's jurisdiction?

    **(a)    Plaintiffs' Answer**

        _____ Yes __X__ No

    **(b)    Defendants' Answer**

        __X__ Yes _____ No

Plaintiffs' remaining claims in this action are for nominal damages. As set forth in Defendants' Motion for Leave to Deposit Nominal Damages With the

Court (ECF 58), Plaintiffs' claims cannot survive a mootness challenge when Defendants transfer to each Plaintiff the entirety of the $1 in nominal damages that they could receive by a judgment entered in their favor in the action.

**5.   Parties to This Action:**

    **(a)   The following persons are necessary parties who have not been joined:**

        Not applicable.

    **(b)   The following persons are improperly joined as parties:**

        Not applicable.

    **(c)   The names of the following parties are either inaccurately stated or necessary portions of their names are omitted:**

        Not applicable.

    **(d)   The parties shall have a continuing duty to inform the Court of any contentions regarding unnamed parties necessary to this action or any contentions regarding misjoinder of parties or errors in the statement of a party's name.**

**6.   Amendments to the Pleadings:**

Amended and supplemental pleadings must be filed in accordance with the time limitations and other provisions of FED. R. CIV. P. 15. Further instructions regarding amendments are contained in LR 15.

    **(a)   List separately any amendments to the pleadings that the parties anticipate will be necessary:**

        None are anticipated at this time.

    **(b)   Amendments to the pleadings submitted LATER THAN THIRTY DAYS after the Joint Preliminary Report & Discovery Plan is filed, or should have been filed, will not be accepted for filing, unless otherwise permitted by law.**

**7.   Filing Times for Motions:**

All motions should be filed as soon as possible. The local rules set specific filing limits for some motions. These times are restated below.

All other motions must be filed WITHIN THIRTY DAYS after the beginning of discovery, unless the filing party has obtained prior permission of the court to file later. Local Rule 7.1A(2).

(a) *Motions to Compel:* before the close of discovery or within the extension period allowed in some instances. Local Rule 37.1.

(b) *Summary Judgment Motions:* within thirty days after the close of discovery, unless otherwise permitted by court order. Local Rule 56.1.

(c) *Other Limited Motions:* Refer to Local Rules 7.2A; 7.2B, and 7.2E, respectively, regarding filing limitations for motions pending on removal, emergency motions, and motions for reconsideration.

(d) *Motions Objecting to Expert Testimony: Daubert* motions with regard to expert testimony no later than the date that the proposed pretrial order is submitted. Refer to Local Rule 7.2F.

## 8. Initial Disclosures:

**The parties are required to serve initial disclosures in accordance with FED. R. CIV. P. 26. If any party objects that initial disclosures are not appropriate, state the party and basis for the party's objection. NOTE: Your initial disclosures should include electronically stored information. Refer to FED. R. CIV. P. 26(a)(1)(B).**

Neither party objects to providing these disclosures.

## 9. Request for Scheduling Conference:

**Does any party request a scheduling conference with the Court? If so, please state the issues which could be addressed and the position of each party.**

Neither party requests a scheduling conference at this time.

## 10. Discovery Period:

The discovery period commences thirty days after the appearance of the first defendant by answer to the complaint. As stated in LR 26.2A, responses to initiated discovery must be completed before expiration of the assigned discovery period.

Cases in this Court are assigned to one of the following three discovery tracks: (a) zero-month discovery period, (b) four-months discovery period, and (c) eight-months discovery period. A chart showing the assignment of cases to a discovery track by filing category is contained in Appendix F. The track to which a particular case is assigned is also stamped on the complaint and service copies of the complaint at the time of filing.

**Please state below the subjects on which discovery may be needed:**

1. The facts and issues related to Defendants' enforcement of the Speech

Zone Policy and Speech Code against Plaintiffs and against other stu-

dents.

2. Defendants' Speech Zone Policy, as well as how they interpreted and applied that policy.

3. Defendants' Speech Code, as well as how they interpreted and applied that policy.

4. Any affirmative defenses that Defendants raise in their answer.

5. The activity, including expressive activity, of each Plaintiff that is the basis for the claims in this action.

6. The dollar amount of attorneys' fees Plaintiffs have accrued, including documentation supporting the fees.

**If the parties anticipate that additional time beyond that allowed by the assigned discovery track will be needed to complete discovery or that discovery should be conducted in phases or be limited to or focused upon particular issues, please state those reasons in detail below:**

The parties believe that an eight-month discovery period would best serve the needs of this case due to the age of the case, the number of parties, and the limitations imposed on counsel and witnesses during the COVID-19 pandemic. Discovery will entail locating and disclosing documents from over five years ago. After this process is complete, the parties will likely have to arrange the depositions of at least fourteen individuals (*i.e.*, twelve Defendants, two Plaintiffs), some of whom may no longer work at Georgia Gwinnett College or even reside in Georgia. And all of this will have to be done in a way to accommodate Defendants' responsibilities at the College or other place of employment and the limitations imposed by the COVID-19 pandemic.

11. **Discovery Limitation and Discovery of Electronically Stored Information:**

(a) **What changes should be made in the limitations on discovery imposed under the Federal Rules of Civil Procedure or Local Rules of this Court, and what other limitations should be imposed?**

Plaintiffs request leave to take at least twelve depositions, as there are twelve Defendants in this case. Should discovery reveal the need to take additional depositions, Plaintiffs will notify the Court and seek additional leave.

(b) **Is any party seeking discovery of electronically stored information?**

_____X_____ Yes _____ No

If "yes,"

(1) The parties have discussed the sources and scope of the production of electronically stored information and have agreed to limit the scope of production (*e.g.*, accessibility, search terms, date limitations, or key witnesses) as follows:

The parties will work to agree on search terms, date limitations, and similar matters after discovery requests are exchanged. The parties do not anticipate any issues involving electronically discoverable material; however, should one arise, the parties will work together to resolve it before seeking the intervention of the Court.

(2) The parties have discussed the format for the production of electronically stored information (*e.g.*, Tagged Image File Format (TIFF or .TIF files), Portable Document Format (PDF), or native), method of production (e.g., paper or disk), and the inclusion or exclusion and use of metadata, and have agreed as follows:

(a) **Plaintiffs' Position**

Plaintiffs' position is that the parties would produce elec-

tronically stored information in the form of either (1) native format or (2) searchable pdf files and load files. The parties will work to agree on the fields that should be included in the load files, but at a minimum will include document author; document date; e-mail sender, recipients, and attachments; and the date and time when the e-mail was sent. Spreadsheets (*e.g.*, Excel documents) and media files will be produced in native format. If there are responsive text messages or social media information, the parties would confer and work together to determine an appropriate form of production for this information. The parties do not anticipate any issues involving electronically discoverable material; however, should one arise, the parties would work together to resolve it before seeking the intervention of the Court.

Plaintiffs' position is that the parties would acknowledge that regardless of a producing party's diligence, an inadvertent production of attorney-client privileged or attorney work product materials may occur. In accordance with FED. R. CIV. P. 26(b)(5) and FED. R. EVID. 502, they would agree that if a party through inadvertence produces discovery that it believes is subject to a claim of attorney-client privilege or attorney work product, the producing party may give written notice to the receiving party requesting that the document

or thing be returned to the producing party or destroyed. The receiving party shall return or destroy such document or thing, which shall not constitute an admission or concession that the document or thing is properly subject to a claim of attorney-client privilege or attorney work product, unless within 10 days of receiving the notice, it files a motion for an in-camera review by the Court to determine whether the designation is proper. Nothing in this paragraph should be treated as foreclosing a party from later moving the Court pursuant to FED. R. CIV. P. 26(b)(5) and FED. R. EVID. 502 for an Order that such document or thing has been improperly designated or should be produced.

**(b)    Defendants' Position**

Defendants' position is that, until they have received discovery requests, they cannot commit to produce documents in a specific format or with the inclusion of certain types of metadata. Once discovery requests are received, however, Defendants will work with Plaintiffs to produce all discoverable documents in an acceptable format. Should any issues arise, the parties will work together to resolve it before seeking the intervention of the Court.

In the absence of agreement on issues regarding discovery of electronically stored information, the parties shall request a scheduling conference in paragraph 9 hereof.

15

**12.   Other Orders:**

**What other orders do the parties think that the Court should enter under Rule 26(c) or under Rule 16(b) and (c)?**

   1. The parties request that this Court set the deadline for the parties to exchange initial disclosures as thirty days after the filing of this response.

   2. The parties request that this Court schedule the case for mediation before a magistrate judge.

**13.   Settlement Potential:**

**(a)   Lead counsel for the parties certify by their signatures below that they conducted a Rule 26(f) conference that was held on *January 10, 2022*, and that they participated in settlement discussions. Other persons who participated in the settlement discussions are listed according to party.**

For plaintiff: Lead counsel (signature): */s/ Tyson C. Langhofer*

Other participants: Mr. Travis C. Barham

For defendant: Lead counsel (signature): */s/ Ellen Cusimano*

Other participants: Mr. Roger Chalmers

**(b)   All parties were promptly informed of all offers of settlement and following discussion by all counsel, it appears that there is now:**

(_____) A possibility of settlement before discovery.

(_____) A possibility of settlement after discovery.

(__X__) A possibility of settlement, but a conference with the [magistrate] judge is needed.

(_____) No possibility of settlement.

**(c)   Counsel do intend to hold additional settlement conferences among themselves prior to the close of discovery. The proposed date of the next settlement conference will be determined by the parties in conjunction with the magistrate**

**judge or other mediator.**

**(d)** **The following specific problems have created a hindrance to settlement of this case.**

**(1)** **Plaintiffs' Position**

At present, the parties are at an impasse over the reasonable attorneys' fees expended during the last five years of litigation, including the appeals to the U.S. Court of Appeals for the Eleventh Circuit and the Supreme Court of the United States.

**(2)** **Defendants' Position**

Plaintiffs could recover no more than nominal damages of $1 each if they prevailed in the action, and Defendants have indicated that they will pay the nominal damages dollar to each Plaintiff to avoid further litigation. Therefore, the presence of the claim for attorneys' fees is a hindrance to settlement of this case. At present, the parties are at an impasse over the reasonableness of the attorneys' fees expended during the litigation, and Plaintiffs' entitlement to them.

## 14.   Trial by Magistrate Judge:

The parties do not consent to having this case tried before a magistrate judge of this Court.

17

Respectfully submitted this the 12th day of January, 2021.

| | |
|---|---|
| */s/ Travis C. Barham* | */s/ Ellen Cusimano* |
| DAVID A. CORTMAN | CHRISTOPHER CARR |
| Georgia Bar No. 188810 | Attorney General |
| TRAVIS C. BARHAM | KATHLEEN M. PACIOUS |
| Arizona Bar No. 024867 | Deputy Attorney General |
| Georgia Bar No. 753251 | ROGER CHALMERS |
| ALLIANCE DEFENDING FREEDOM | Senior Assistant Attorney General |
| 1000 Hurricane Shoals Road N.E., | ELLEN CUSIMANO |
| Ste. D-1100 | Assistant Attorney General |
| Lawrenceville, Georgia 30043 | 40 Capitol Square, Southwest |
| Telephone: (770) 339–0774 | Atlanta, Georgia 30334-1300 |
| Facsimile: (770) 339–6744 | Telephone: (404) 463–8850 |
| dcortman@ADFlegal.org | Facsimile: (404) 651–5304 |
| tbarham@ADFlegal.org | rchalmers@law.ga.gov |
| | ecusimano@law.ga.gov |
| TYSON C. LANGHOFER* | |
| Arizona Bar No. 032589 | |
| ALLIANCE DEFENDING FREEDOM | |
| 44180 Riverside Parkway | |
| Lansdowne, Virginia 20176 | |
| Telephone: (571) 707–4655 | |
| Facsimile: (571) 707–4656 | |
| tlanghofer@ADFlegal.org | |
| | |
| * Admitted *pro hac vice*. | |
| | |
| *Attorneys for Plaintiffs* | *Attorneys for Defendants* |

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **CHIKE UZUEGBUNAM**, *et al.*, | |
| *Plaintiffs,* | Case No. 1:16-cv-04658-ELR |
| v. | **THE HONORABLE ELEANOR L. ROSS** |
| **STANLEY C. PRECZEWSKI**, *et al.*, | |
| *Defendants.* | |

**SCHEDULING ORDER**

Upon review of the information contained in the Joint Preliminary Report & Discovery Plan form completed and filed by the parties, the Court orders that the time limits for adding parties, amending the pleadings, filing motions, completing discovery, and discussing settlement are as set out in the Federal Rules of Civil Procedure and the Local Rules of this Court, except as herein modified:

1.  The parties shall exchange initial disclosures within thirty days after the filing of the Joint Preliminary Report & Discovery Plan.

2.  The parties shall have eight months to complete discovery.

3.  The Plaintiffs shall have leave to conduct twelve depositions.

4.  This Court will schedule this case for mediation before a magistrate judge.

IT IS SO ORDERED, this _____ day of _____, 20____.

_____
THE HONORABLE ELEANOR L. ROSS
UNITED STATES DISTRICT JUDGE

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of January, 2022, I electronically filed a true and accurate copy of the foregoing document with the Clerk of Court using the CM/ECF system, which automatically sends an electronic notification to the following attorneys of record:

> CHRISTOPHER CARR
> Attorney General
> KATHLEEN M. PACIOUS
> Deputy Attorney General
> ROGER CHALMERS
> Senior Assistant Attorney General
> ELLEN CUSIMANO
> Assistant Attorney General
> 40 Capitol Square, Southwest
> Atlanta, Georgia 30334-1300
> Telephone: (404) 463–8850
> Facsimile: (404) 651–5304
> rchalmers@law.ga.gov
> ecusimano@law.ga.gov
> *Attorneys for Defendants*

Respectfully submitted on this the 12th day of January, 2022.

> */s/ Travis C. Barham*
> Travis C. Barham
> *Attorney for Plaintiffs*